567 F.2d 1226
 UNITED STATES of America ex rel. RICKETTS, Wilbert, Sr., Appellant,
v.
LIGHTCAP, James L., State Agent at S.C.I.D. Mail Room and
Jeffes, Glen R. and Staff at S.C.I.D. and Bureau
of Corrections, et al., Appellees.
 No. 76-1841.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 6, 1977.
Decided Dec. 14, 1977.
 
 George E. Rahn, Jr., James D. Crawford, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.
 Michael H. Garrety, J. Andrew Smyser, Deputy Attys. Gen., Robert P. Kane, Atty. Gen., for appellees.
 Before ADAMS, VAN DUSEN and HUNTER, Circuit Judges.
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This appeal raises the question whether a state prisoner must exhaust state administrative remedies before bringing an action under 42 U.S.C. § 1983 in federal court for deprivation of his constitutional rights. The District Court for the Middle District of Pennsylvania dismissed the prisoner's pro se complaint under F.R.Civ.P. 12(b) for failure to exhaust such remedies. Since the decisions of the Supreme Court indicate that state prisoners need not exhaust administrative remedies, we reverse and remand the case for further proceedings.
 
 
 2
 This case is the second civil rights action brought by Wilbert Ricketts, Sr., against officials of the State Correctional Institution at Dallas, Pennsylvania (S.C.I.D.). In the first action, Ricketts and Roy Williams attacked the constitutionality of the rules by which the prison controls reading matter reaching inmates, Bureau of Corrections Administrative Directive No. 814 (BC-ADM 814), 37 Pa.Code §§ 95.71 et seq. On July 14, 1975, the District Court for the Middle District of Pennsylvania dismissed the pro se complaint on defendant's motion for failure to exhaust the administrative remedies, including appeal, available under the directive.[1]
 
 
 3
 In December 1975 Ricketts filed a second pro se complaint in the District Court for the Eastern District of Pennsylvania. The matter was later transferred to the Middle District pursuant to 42 U.S.C. § 1404 on plaintiff's motion.
 
 
 4
 Since the district court dismissed the complaint without taking evidence, F.R.Civ.P. 12(b), we must assume the facts alleged in the complaint to be true. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Radovich v. National Football League, 352 U.S. 445, 448, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957).
 
 
 5
 The second complaint charged that defendants James Lightcap, State Agent in S.C.I.D.'s mailroom, Glen Jeffes, superintendent of the prison, and the staffs of the institution and of the state Bureau of Corrections violated rights guaranteed Ricketts by the first and fourteenth amendments. Ricketts alleged that defendants had withheld from him a book which he had ordered and paid for, that defendant Lightcap, without authority, signed Ricketts' name to the insurance receipt for the book when it arrived at S.C.I.D., and that other mail had later been withheld from him. We do not know what, if any, administrative remedies Ricketts attempted to use, since the district court dismissed the complaint. The complaint does indicate that he approached one member of the committee responsible for reviewing incoming publications and was told that the book he ordered had not been declared obscene by the committee. There is no allegation that Ricketts appealed to the prison superintendent or to other state authorities. The complaint seeks an injunction, a declaratory relief, and compensatory and punitive damages.
 
 
 6
 The defendants moved to dismiss the complaint on the grounds that Ricketts was collaterally estopped by the decision in the first case. They characterized the second complaint as essentially an attack on BC-ADM 814, as was the first action. Ricketts filed an answer to the motion addressing the collateral estoppel issue.
 
 
 7
 In a memorandum and order on May 5, 1976, Judge Nealon held that the plaintiff was not collaterally estopped, since the second complaint attacked the manner in which the prison's policy was implemented, not the Directive itself. Defendants do not appeal this decision.
 
 
 8
 Nevertheless, the district court granted the defendants motion to dismiss. Sua sponte, the court held that the complaint showed that Ricketts had not exhausted administrative remedies[2] and that this failure was fatal to the section 1983 action.
 
 
 9
 Plaintiff appeals on three grounds. First, he claims that the district court should have given him notice of and an opportunity to respond specifically to the issue of exhaustion. Second, he argues that the record does not support the judge's finding that he failed to exhaust administrative remedies. Third, he takes the position that exhaustion of administrative remedies is not required in actions under section 1983.
 
 
 10
 Since our reading of recent Supreme Court cases leads us to conclude that Ricketts need not exhaust his administrative remedies before bringing an action under section 1983 in federal court, we do not need to consider the first two contentions.
 
 
 11
 The general rule in actions under section 1983 is that state remedies need not be exhausted as a prerequisite to federal jurisdiction. This rule was formulated in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), in which the Supreme Court found in the legislative history of the Civil Rights Act the intent that the federal remedy in section 1983 be "supplementary" to any remedy any State might have. Id. at 183, 81 S.Ct. 473.
 
 
 12
 The Supreme Court later extended this rule specifically to include exhaustion of administrative remedies. See McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). Thereafter, the Court has often repeated without discussion that administrative remedies need not be exhausted. See Ellis v. Dyson, 421 U.S. 426, 432-33, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Steffel v. Thompson, 415 U.S. 452, 472, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Preiser v. Rodriguez, 411 U.S. 475, 492-93 n. 10, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); Wilwording v. Swenson, 404 U.S. 249, 251-52, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); King v. Smith, 392 U.S. 309, 312 n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).
 
 
 13
 While the exhaustion discussion in these cases can be interpreted as ambiguous or as unnecessary dicta, see, e. g., Cordova v. Reed, 521 F.2d 621, 624 (2d Cir. 1975); Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), this court has agreed with the view of the majority of courts of appeals that administrative remedies, irrespective of their adequacy, need not be exhausted by a plaintiff seeking a federal remedy under section 1983. Hochman v. Board of Education, 534 F.2d 1094 (3d Cir. 1976). In that case, a nontenured teacher brought an action against the school board alleging that he was dismissed in retaliation for his exercise of first amendment rights. The court followed what it called the "unqualified expression" of the rule by the Supreme Court, and emphasized:
 
 
 14
 When appropriate federal jurisdiction is invoked alleging violation of First Amendment rights, as Hochman does here, we may not insist that he first seek his remedies elsewhere no matter how adequate those remedies may be.
 
 Id. at 1097.[3]
 
 15
 While courts should be cautious when delving into the internal operations of a prison, see Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); Carpenter v. State of South Dakota, 536 F.2d 759, 763 (8th Cir. 1976); Gittlemacker v. Prasse, 428 F.2d 1, 4 (3d Cir. 1970), the Supreme Court has not differentiated actions by prisoners under section 1983 from those of other plaintiffs, and has not required exhaustion of state administrative remedies. In Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), the Court in a per curiam opinion reversed the holding of this circuit that a state prisoner must allege exhaustion of state administrative remedies. The opinion first noted that the remedies available were likely to be futile, and concluded,
 
 
 16
 In any event, resort to these remedies is unnecessary in light of our decisions in Monroe v. Pape, 365 U.S. 167, 180-183, 81 S.Ct. 473, 5 L.Ed.2d 492; McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622; and Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647. On the basis of these decisions . . . the judgment of the Court of Appeals is reversed . . . .
 
 
 17
 There was some doubt whether the mention of the futility of the procedure available to Houghton was necessary to the result in the case, see, e. g., Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969), cert. denied 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). This doubt was dispelled by the Court in Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). The per curiam opinion emphasized that, although futility of administrative remedy had been mentioned, Houghton "held that 'in any event, resort to these remedies is unnecessary.' " Id. 404 U.S. at 252, 92 S.Ct. at 409. Later Supreme Court cases involving section 1983 actions by prisoners reiterated the position that exhaustion of administrative remedies is not required. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Steffel v. Thompson, 415 U.S. 452, 472, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Preiser v. Rodriguez, 411 U.S. 475, 482, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); cf. Ellis v. Dyson, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975). Several courts of appeals have agreed that the Supreme Court cases have established the rule that prisoners need not exhaust administrative remedies before bringing an action under § 1983. See, e. g., Hardwick v. Ault, 517 F.2d 295, 296 (5th Cir. 1975); McCray v. Burrell, 516 F.2d 357, 360-65 (4th Cir. 1975) (en banc), cert. dismissed as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); McClelland v. Sigler, 456 F.2d 1266, 1267 (8th Cir. 1972); Jones v. Metzger, 456 F.2d 854, 856 (6th Cir. 1972). But see Morgan v. LaVallee, 526 F.2d 221, 223 (2d Cir. 1975).
 
 
 18
 Appellees argue that this line of cases has been undercut by recent Supreme Court decisions. In Gibson v. Berryhill, 411 U.S. 564, 573-75 & n. 14, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the Court's opinion seemed to look to the adequacy of state administrative remedies in reaching its conclusion that they need not be exhausted. See id. at 581, 93 S.Ct. 1689 (Marshall, J., concurring); P. Bator, D. Shapiro, P. Mishkin & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 158 (2d ed. Supp.1977). See also Runyon v. McCrary, 427 U.S. 160, 186 n. *, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (Powell, J., concurring).
 
 
 19
 After its decision in Gibson, the Court again reaffirmed its adherence to the rule that exhaustion is not required, without mentioning the adequacy of available remedies. Ellis v. Dyson, 421 U.S. 426, 432-33, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). These cases indicate that the possible sentiments in Gibson have not come to fruition.[4]
 
 
 20
 The appellees next urge that this court apply one of several "exceptions" to the general rule to this case. First, they point out the series of cases in the Second Circuit which have held that plaintiffs in section 1983 cases must exhaust administrative remedies if they are found to be adequate to grant the relief requested. See, e. g., Gonzalez v. Shanker, 533 F.2d 832 (2d Cir. 1976); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). The Second Circuit, like other courts, has recognized that prisoners are not held to any higher standard under section 1983 than other plaintiffs. Morgan v. LaVallee, 526 F.2d 221, 223 (2d Cir. 1975). See Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Hardwick v. Ault, 517 F.2d 295, 296 (5th Cir. 1975); McCray v. Burrell, 516 F.2d 357, 362 (4th Cir. 1975) (en banc), cert. dismissed as improvidently granted, 406 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); Jones v. Metzger, 456 F.2d 854 (6th Cir. 1972). Since this circuit has rejected the Second Circuit's interpretation of the Supreme Court's exhaustion cases, see Hochman v. Board of Education, 534 F.2d 1094, 1096-97 (3d Cir. 1976), it would not be proper to adopt that interpretation for prisoner cases.
 
 
 21
 Second, appellees point out the distinction running through cases in the Ninth Circuit between administrative procedures which are remedial in nature and those which are designed to forestall a deprivation of a constitutional right. The latter must be exhausted. See, e. g., Toney v. Reagan, 467 F.2d 953 (9th Cir. 1972), cert. denied, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973); Whitner v. Davis, 410 F.2d 24 (9th Cir. 1969). As developed in Whitner, this doctrine was applied to a dismissed school teacher who, after being informed of the decision to dismiss her, did not use the administrative remedies which could have reversed the decision before the effective date of the dismissal. As of the time she would have used the administrative process, she had not yet been subjected to any deprivation. Thus, the process was said to be one that would "forestall" a deprivation. By failing to use the administrative process, she was held to have accepted the termination. The case specifically distinguished an administrative process which was designed to remedy a deprivation. See id. at 28. An example would be a procedure designed to reverse the school's decision after the teacher had been dismissed, i. e., once the deprivation had occurred. In the instant case, Ricketts' complaint alleged that the prison deprived him of his book. The remedies now being invoked by the defendants are designed to remedy the situation, which even in the Ninth Circuit need not be exhausted. We therefore do not need to consider whether the qualified exhaustion rule should be adopted in this circuit.[5]
 
 
 22
 Finally, in regard to the appellees' argument as to exhaustion, it is important to note that this is hardly a situation in which exhaustion would be applicable in any event. The main thrust of Ricketts' complaint indeed the only thrust is that James Lightcap, an attendant at the prison mailroom, improperly seized a publication that was ordered by, and addressed to, the petitioner. Nothing in the pleadings indicates that Lightcap advised the petitioner that the publication had been seized pursuant to any prison regulation. Rather, the complaint makes clear that Lightcap signed Ricketts' name to the mail receipt without authority (and without notifying Ricketts) and failed to deliver the publication to Ricketts. It was not until Ricketts questioned the publisher regarding the whereabouts of the book that the improper conduct of the mailroom attendant came to light. No administrative process has been addressed to the question of the improper seizure and unauthorized signing of a prisoner's name. The administrative process would deal, if at all, with the procedure for determining whether a publication is or is not obscene. But Ricketts, at least in this case, does not challenge the procedure that was established by the prison for ascertaining whether a publication is obscene. Instead, he seeks to enjoin Lightcap from improperly seizing publications and to obtain monetary damages for the improper seizure that took place on the occasion in question. Each day of delay that occurs before Ricketts receives his book may well constitute a further violation of his first amendment rights.
 
 
 23
 Lastly, appellees argue that this case is not ripe for adjudication, since a "final" decision will not have been made until the prisoner has appealed to the state Attorney General and Commissioner of Correction, in accordance with BC-ADM 814. The doctrines of ripeness for adjudication and of exhaustion of administrative remedies are distinct and not interchangeable. While exhaustion is sometimes a jurisdictional prerequisite to a civil suit in a district court, ripeness is a product of the concept of justiciability. See 3 K. Davis, Administrative Law Treatise § 21.01 at 116 (1958). Ripeness concerns whether the legal issue at the time presented in a court is sufficiently concrete for decision. Courts will not decide abstract legal issues posed by two parties; the issue in controversy must have a practical impact on the litigants. See Abbott Laboratories v. Gardner, 387 U.S. 136, 148-54, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Continental Air Lines, Inc. v. C.A.B.,173 U.S.App.D.C. 1, 522 F.2d 107, 124-25 (1975) (en banc); Itzcovitz v. Selective Service Local Board No. 6, 447 F.2d 888, 891 (2d Cir. 1971).[6]
 
 
 24
 The usual standard for ripeness should not differ because an action is brought under section 1983. See McCray v. Burrell, 516 F.2d 357, 364 (4th Cir. 1975) (en banc), cert. dismissed as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976). To impose a heightened ripeness requirement would in effect recreate the exhaustion rule rejected by Monroe v. Pape and its progeny. Ricketts has alleged that he has been deprived of reading material which arrived at the prison addressed to him and which he had a constitutional right to receive. Since this allegation indicates that an action taken by the prison has had a practical impact on Ricketts' rights, a ripe constitutional injury is stated. See Hardwick v. Ault, 517 F.2d 295 (5th Cir. 1975).
 
 
 25
 We reverse the order of the district court dismissing plaintiff's complaint for failure to exhaust administrative remedies, and remand for further proceedings consistent with this opinion.
 
 VAN DUSEN, Circuit Judge, concurring:
 
 26
 I concur with the majority's opinion because the case law establishes, even in the administrative and prison setting, an unflinching adherence to the rule of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that in § 1983 cases state remedies need not be exhausted.
 
 
 27
 Relaxation of the rule of Monroe might endanger the provision for an adequate remedy to victims of civil rights violations. Therefore, this rule must be safeguarded from relaxation except for the most clearly compelling policy reasons. Because the problems of prison discipline and administration could conceivably present such compelling reasons, I think certain aspects of this case need further emphasis.
 
 
 28
 I disagree with the majority's view that the only thrust of the complaint is that a mailroom attendant improperly seized a publication. Although the record is not entirely clear on why the relator's publications were not delivered, and there is some confusion as to the facts stated in the pro se complaint and supporting, sworn Request for Documents under Rule 34, the record indicates that the publications were withheld because they were obscene. The relator states in the complaint that "a slip came from the front office . . . saying that the books were found to be unacceptable and rated 3X. The book review committee never seen (sic) the books because I spoke to Mr. Crisler who is on the Committee." Surely this official notification from the prison office is inconsistent with the view that a mailroom attendant simply stole the publications. The relator's assertion in his Request for Documents that his magazine, Teeny Floppers, is "being held at front office" also indicates that official action has been taken regarding the publication. As the majority notes, Lightcap, the mailroom attendant, is alleged to have signed the relator's name to a mail receipt without the relator's knowledge. The majority fails to note, however, that the complaint states that Lightcap signed his own name along with that of Ricketts. This clearly militates against any implication of deceit or forgery.
 
 
 29
 According to the complaint, the books were ordered from Visual Adventures Co., but in an earlier suit attacking the constitutionality of the obscenity regulation, Ricketts apparently claimed that the books withheld were entitled Visual Adventures and Candor in Love. Ricketts v. Bureau of Corrections, at 2, Opinion dated July 14, 1975 (Civ.No. 74-1173, M.D.Pa.). It is not clear whether the books involved in this case are the same as in the earlier case, as one book or magazine alleged to be withheld in the instant case is entitled Teeny Floppers. In his affidavit, the relator claims that the books were never declared obscene by the administrative community, but he never states that he sought review by that committee. Nonetheless, he seems to acknowledge that if there is a problem with the books, it is obscenity rather than some other category of banned books. The district court assumed that the books were withheld because they were obscene. United States ex rel. Ricketts v. Lightcap, at 2, Opinion dated May 5, 1976 (Civ.No. 75-1192, M.D.Pa.). This is not challenged in the relator's brief, which quotes BC-ADM 814, providing that "receipt of publication shall be disapproved when the publications contain . . . (j)udicially defined obscenity." If, in his brief, the relator were simply arguing that his publications were improperly seized or stolen, there would be no reason to refer to BC-ADM 814. Thus, contrary to the position taken by the majority, it seems to me that the relator is attacking the application of the obscenity regulation and publication screening procedures to specific publications.
 
 
 30
 The majority admits that the rule not requiring exhaustion followed in this case is not fully consistent with the usual deference given to prison administrative procedures.[1] I think that this is manifestly true and that the peculiar problems of prison administration and discipline require courts to show a degree of deference to prison procedures, even when the method of adjudicating constitutional rights is at stake. Indeed, this position is supported by the recent case of Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), in which the Supreme Court said:
 
 
 31
 "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration. We noted in Pell v. Procunier, 417 U.S., (817) at 822 (94 S.Ct. 2800, 41 L.Ed.2d 495) that
 
 
 32
 '(a) prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.
 
 
 33
 'In a prison context, an inmate does not retain those First Amendment rights that are "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." ' "
 
 
 34
 Id. at 125, 97 S.Ct. at 2538.
 
 
 35
 The federal prison system, as well as others, has recognized the importance of avoiding obscene, sexually stimulating material in view of the sexually motivated assaults occurring in recent years in prisons.[2] Surely preventing sexual assaults is not only, in the words of Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), a "legitimate penological objective" but a duty of prison officials. For it seems to me that the right of a prisoner to be reasonably free from an atmosphere conducive of sexual assault is a constitutional right; it falls within the Eighth Amendment right against cruel and unusual punishment. Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973) ("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates . . . ."). Certainly there is wisdom to giving some deference to prison administrative procedures when prison officials are trying to balance this right against prisoners' First Amendment right to immediate access to material which later may be found to be obscene. The language of the Supreme Court in Procunier v. Martinez, 416 U.S. 396, 413-14, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974) is instructive on this point.
 
 
 36
 "Applying the teachings of our prior decisions to the instant context, we hold that censorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad."
 
 
 37
 Deference to an administrative procedure designed to further the substantial governmental interest of maintaining order in a prison would seem to be warranted even though that procedure regulates First Amendment rights.
 
 
 38
 It should be noted that as the prison's standard for withholding material is the judicial definition of obscenity,[3] the position taken here does not have to go as far as the Supreme Court went in Procunier v. Martinez, supra, and does not necessarily imply that prisoners may not have access to material they could purchase legally outside of prison. Rather, the restriction the prison would place on First Amendment rights, which I contend is consistent with "legitimate penological objectives" or "substantial governmental interests" is procedural in character. I suggest that the manner in which the Government may pass upon questionable material may be tailored to the prison context. To suggest that the courts should show deference to prison procedures relating to constitutional rights is not to say that courts should show deference to substantive prison decisions on constitutional issues.
 
 
 39
 Moreover, in the First Amendment context, Jones v. North Carolina Prisoners' Labor Unions, Inc., supra, emphasized that the burden is on the objecting prisoner to show that a regulation is invalid. Because the regulation relating to obscene material is coupled with a procedural regulation giving the prisoner an opportunity to appeal to the committee and to the superintendent, and because the prisoner did not attempt to prove the invalidity of this procedural regulation but simply ignored it, allowing him to have his claim determined by the district court at this time would seem to conflict with Jones.
 
 
 40
 I note that in the only two cases directly on point, Judge Winter, writing for the Fourth Circuit, and Judge Wisdom, writing for the Fifth Circuit, expressed reservations about the appropriateness of not requiring exhaustion of administrative remedies.
 
 
 41
 "We keenly appreciate the force of the factors identified by the district court in McCray (McCray v. Burrell, D.C., 367 F.Supp. 1191) and Washington (Washington v. Boslow, D.C., 375 F.Supp. 1298) as supporting a policy determination that (the) exhaustion of available administrative remedies should be required of prisoners of correctional institutions in Maryland as a prerequisite to a suit under § 1983. We recognize the burden which the increasing flood of prisoner complaint litigation places upon the already overtaxed district courts as well as ourselves. Nevertheless, we are constrained to conclude that the holding that exhaustion is required may be reached only by either legislation conditioning resort to 42 U.S.C. § 1983 upon the exhaustion of available administrative remedies, or by the Supreme Court's re-examination and modification of its controlling adjudications on the subject. Congress has not enacted such legislation. The Supreme Court has not yet begun a re-examination of its previous holdings and we have no basis on which to predict that it will, or, if so, with what result. We think that we have no alternative but to hold that exhaustion may not be required."
 
 
 42
 Hardwick v. Ault, 517 F.2d 295, 297 (5th Cir. 1975), quoting McCray v. Burrell, 516 F.2d 357, 360-61 (4th Cir. 1975). I too share these reservations, but also feel that modification of the rule followed here can only come from Congress or from the Supreme Court.
 
 
 43
 Aside from the exhaustion issue, the context of prison discipline also may justify a reconsideration of the ripeness doctrine in § 1983 cases. Respondents argue that the case is not ripe for adjudication, not only because the prisoner did not appeal to the State Attorney General and Commissioner of Corrections, as the majority notes, but also because he failed to take the simple step of appealing to the prison administrative committee and then to the superintendent of the prison. Requiring the prisoner to go beyond the institution and seek review by the Attorney General is unwarranted. Where the only decision was that made by a low-level custodial officer, however, the contention that the case is not ripe for adjudication until a decision has been rendered by a prison official in a high position of responsibility has merit. One commentator has noted:
 
 
 44
 "(T)he notion of ripeness or state action as a bar to initial assertion of a section 1983 claim in federal court has greater appeal where the alternative is an administrative determination. Agencies may often be created to 'fine tune' the application of statutory mandates or general standards to particular cases. To perform this function, procedures are established within the agency to govern individual complaints of unfair treatment. Where this is true, the view that the action of any single official should not give rise to a constitutional claim until other officials within that agency have had the opportunity to review the claim thus allowing the particular agency to perform fully one of the functions for which it was established begins to make a good deal of sense."
 
 
 45
 Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1272 (1977). See also Stevenson v. Bd. of Educ. of Wheeler County, Georgia, 426 F.2d 1154 (5th Cir. 1970), in which the court stated that Monroe and its progeny do not hold "that federal courts are to intervene in school personnel and management problems without requiring such prior reference to local institutional authority as may be necessary to assure that the action complained of is final within the institution in the sense that it is ripe for adjudication." Id. at 1157. This ripeness principle seems applicable when the state agency is a prison and the "fine tuning" concerns balancing prisoners' rights against prison discipline. See Palmigiano v. Mullen, 491 F.2d 978, 980 n.4 (1st Cir. 1974).
 
 
 46
 Discussing the ripeness issue at oral argument, counsel for the respondents admitted that, in the language of Monroe, "(t)he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." 365 U.S. at 183, 81 S.Ct. at 482. He went on to urge, however, that until there is a final institutional decision, we are at a stage that precedes remedying a wrong. Further, counsel noted that when many people at an institution are involved in a decision-making process and the person responsible for institutional decisions cannot decide everything in the first instance, until he does make a decision, there is no decision in the institutional sense.
 
 
 47
 Notwithstanding the wisdom of requiring a final institutional decision before a prisoner's complaint will be deemed ripe for adjudication, as the majority notes, the usual standard for ripeness applies to a § 1983 action, and under that standard, there appears to be some authority for the proposition that Ricketts' complaint states a ripe constitutional injury. See McCray v. Burrell, 516 F.2d 357 (4th Cir. 1975), cert. dismissed as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); Hardwick v. Ault, 517 F.2d 295 (5th Cir. 1975).[4]
 
 
 
 [1]
 BC-ADM 814 provides that a staff committee appointed by the Superintendent at each institution shall review all incoming publications. Section IV(A)(4) of that directive provides that receipt of publications shall be disapproved (by the Committee), when, among other reasons, the publications contain judicially defined obscenity
 Residents have the right to appeal to the Superintendent any staff committee decision disapproving a publication.
 The decision of the Superintendent may be appealed to the Commissioner of Correction, who shall evaluate the publication in conjunction with the Office of the Attorney General.
 
 
 [2]
 The court stated:
 Although the record now before the Court is not completely clear as to the extent of administrative remedies pursued by plaintiff, the Court is certain that the appellate procedures as outlined in BC-ADM 814 have not been exhausted.
 
 
 [3]
 Accord, Gillette v. McNichols, 517 F.2d 888, 890 (10th Cir. 1975); McCray v. Burrell, 516 F.2d 357, 360-65 (4th Cir. 1975) (en banc), cert. dismissed as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); Hardwick v. Ault, 517 F.2d 295 (5th Cir. 1975); Nickerson v. Thomson, 504 F.2d 813, 817 (7th Cir. 1974); Raper v. Lucey, 488 F.2d 748, 751 n. 3 (1st Cir. 1973); Gilliam v. City of Omaha, 459 F.2d 63 (8th Cir. 1972); Jones v. Metzger, 456 F.2d 854, 856 (6th Cir. 1972)
 
 
 [4]
 Appellees also cite Schlesinger v. Councilman, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), and Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Neither case indicates any erosion of the Court's position on exhaustion of state remedies under § 1983. Schlesinger dealt with the deference of federal courts to the system of military justice, and Huffman with the application of the abstention doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), to state civil contempt proceedings in certain circumstances. Both cases thus applied doctrines which had previously coexisted with the non-exhaustion rule of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). See, e. g., State of New Jersey v. Chesimard, 555 F.2d 63, 67 (3d Cir. 1977)
 We recognize that the rule followed in this case is not fully consistent with usual deference given to prison administrative procedures, see Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); Jones v. Carlson, 495 F.2d 209 (5th Cir. 1974). We do believe that the district courts have available the means to develop flexible procedures which can retain many of the benefits of an exhaustion rule without requiring exhaustion of administrative remedies. See, e. g., F.R.Civ.P. 16; Hardwick v. Ault, 517 F.2d 295, 298 (5th Cir. 1975) (discussing tentative report of Federal Judicial Center committee studying prisoner civil rights actions, chaired by Judge Ruggero J. Aldisert of this Court, and pointing out "special report" procedure devised by Judge Vincent Biunno of the District of New Jersey).
 
 
 [5]
 At its inception the Ninth Circuit doctrine was similar to a well developed series of cases holding that a claim that the state has deprived plaintiff of property without due process of law is not sufficient to state a constitutional deprivation if the process which the state provided had not been used. See, e. g., Elterich v. City of Sea Isle City, 477 F.2d 289, 291 (3d Cir. 1973); Randell v. Newark Housing Authority, 384 F.2d 151, 156-57 (3d Cir. 1967). Similarly, the Fourth Circuit has treated the Ninth Circuit cases as simply applying the traditional ripeness doctrine. See McCray v. Burrell, 516 F.2d 357, 364 (4th Cir. 1975) (en banc), cert. dismissed as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976)
 
 
 [6]
 In this respect, the ripeness doctrine is closely related to the case or controversy requirement of Article III of the United States Constitution. See P. Bator, D. Shapiro, P. Mishkin & H. Wechsler, Hart & Wechsler's Federal Courts and the Federal System 145-46 (2d ed. 1973); 3 K. Davis, Administrative Law Treatise §§ 21.01, 21.10 (1958)
 
 
 [1]
 See McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Jones v. Carlson, 495 F.2d 209 (5th Cir. 1974) (federal prisoners must exhaust administrative remedies before bringing court challenge to administrative action); Waddell v. Alldredge, 480 F.2d 1078 (3d Cir. 1973) (same). See generally Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases, 41 U.Chi.L.Rev. 537 (1974). Nor is there an easy reconciliation between the rule followed here and the policies requiring a habeas corpus petitioner to exhaust state administrative and judicial remedies, see, e. g., Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); 28 U.S.C. §§ 2254(b), 2254(c). See generally Federal Judicial Center, Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts, 14-15 n.24 (Tent.Report No. 2, 1977); H. Friendly, Federal Jurisdiction: A General View, 103-107 (1973)
 By exhaustion of administrative remedies (appealing to the prison administrative committee and then to the prison superintendent), I do not include going beyond the procedure at the institution and requiring review by the Pennsylvania Attorney General and the Commissioner of Corrections. See page 1236, infra.
 
 
 [2]
 In the federal prison system, "(a) publication is not acceptable if it is determined to be detrimental to the security, good order or discipline of the institution." Federal Prison System Policy Statement No. 7300.42c, P 4b (5/4/76). Recent reports by the Federal Bureau of Prisons express a concern about the relationship between obscene material and "good order or discipline." The Bureau's position is that: "1) inmates (especially inmates convicted of homosexual offenses) tend to be excited sexually by pornography or other symbolic representations; 2) sexual arousal may augment aggressive responses where alternative responses are restricted . . .." Pornography and Violence, 2 (Unpublished Report of the Federal Bureau of Prisons). In support of this position, the Bureau relies on several studies by sociologists and psychologists. For example, in an experiment conducted by Professor Dolf Zillmann of the University of Pennsylvania, subjects were to view several films and then to deliver electric shocks to other subjects to punish them if they answered questions about the films incorrectly. When a subject viewed an erotic film, he delivered stronger shocks than when he viewed an aggressive or neutral film. Zillmann concludes, therefore, that viewing pornographic material increases aggressive behavior. Zillmann, Excitation Transfer in Communication-Mediated Aggressive Behavior, 7 J. of Experimental and Soc. Psych. 419 (1971). The other experiments and studies relied upon by the Bureau are inconclusive. See materials cited in Pornography and Violence, supra, 1-2. In this gray area of scientific inquiry, however, it seems reasonable to show some deference to the Bureau's interpretation of these studies, since the Bureau reads them against the backdrop of day-to-day experience with problems of violence and prison discipline. The need to show deference to prison authorities in this area is underscored by the fact that of the eight homicides at the federal penitentiary at Lewisburg, Pa., between March 24, 1974, and May 15, 1976, five were related to homosexual assaults. Sexual Assaults (Unpublished Report of the Federal Bureau of Prisons). The Bureau is not content to rest its position on easy assumptions, but is continuing a thorough study in this area. See id
 
 
 [3]
 See page 1233, supra
 
 
 [4]
 I differ somewhat from the majority on the strength of authority of McCray and Hardwick on the ripeness issue. Apparently, in both of those cases the inmate grievance committees were extra-institutional and served the entire prison system. For example, the Maryland Inmate Grievance Commission Act, 4A Md. Code Ann., Art. 41, § 204F (Cum.Supp.1976), which establishes the administrative procedure not exhausted by the prisoner in McCray, provides for the Commission as a separate state agency within the Department of Public Safety and Correctional Services, with the members to be appointed by the Governor. Therefore, although McCray and Hardwick are strong authority on whether the ripeness doctrine requires a decision from the Pennsylvania Attorney General, it is only by a somewhat tenuous analogy that they constitute authority on the issue of whether an institutional decision, in this case a decision by the superintendent of the prison (see page 1236, supra ) is required