Daniel **RICHARDSON**, Jr., and Anna C. **Richardson**, his wife, Plaintiffs,

v.

The **CITY OF NEWARK**, Delaware, a Municipal Corporation of the State of Delaware, et al., Defendants.

Civ. A. No. 76–117.

United States District Court, D. Delaware.

March 29, 1978.

John B. Kennedy, Wilmington, Del., for plaintiffs.

Mason E. Turner, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, Del., for individual defendants.

Thomas G. Hughes, City Solicitor, Newark, Del., for defendant City of Newark.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The question raised by this motion to dismiss the complaint is whether an intentional traffic arrest made without probable cause and without good faith is a constitutional violation of sufficient magnitude so as to be cognizable under 42 U.S.C. § 1983. The issue is so framed because on a motion to dismiss, all inferences are construed in favor of the nonmovant.

Plaintiff alleges that he was unlawfully stopped and ticketed for speeding on July 20, 1974. Plaintiff's conviction was reversed upon rehearing and charges dismissed against him on September 3, 1975. The plaintiff asserts that the anxiety attendant to the traffic stop resulted in a heart attack. For this injury and damage to his reputation, plaintiff seeks $1,000,000 plus $1,000,000 in punitive damages.[1]

Plaintiff has charged Officer Hewes with malicious intent in conducting the arrest, claiming that the arrest was a result of a conspiracy conducted by Hewes and other members of the Newark Police Department to inflate their arrest statistics. Finding no supporting evidence or even inference of such a conspiracy, the Court at an earlier stage of the proceedings granted summary judgment in favor of the other individual defendants. With respect to defendant Hewes, however, there was some evidence that he had clocked plaintiff outside the city limits beyond his jurisdiction. Therefore, because "evidence from affidavits, depositions, and exhibits [raising] several genuine issues of fact concerning defendant Hewes' probable cause and good faith" permitted "an inference that the officer acted intentionally and with knowledge that the arrest was not based on probable cause nor conducted in good faith,"[2] defendant Hewes' motion for summary judgment was denied.

Defendant's motion presently before the Court seeks to dismiss the complaint on grounds that the stop of plaintiff motorist which resulted in detention for the few minutes necessary to write up a traffic citation is a *de minimis* intrusion not of constitutional dimension. It is undisputed that plaintiff was not taken into custody but rather free to go his way upon issuance of the ticket. Plaintiff expressly disclaims reliance on the length of the stop but bases his entire claim on the fact "that he was stopped in the first place."[3]

---

1. Plaintiff is joined in this suit by his wife who claims she "suffered great bodily pain and injury and mental anguish." Doc. 1, at 8.

2. Doc. 54 at 3–4.

3. Doc. 62 at 4. The Complaint (Doc. 1) at paragraph 39 avers "[he] was forced to incur substantial obligations for attorney's fees and other expenses in the defense of himself against the unwarranted and unfounded prose-

Defendant maintains that the imposition to plaintiff is so minimal as to render his claim devoid of constitutional significance. The defendant bolsters his *de minimis* argument by pointing to remedies available within the state system. The argument goes that although there is no exhaustion requirement in section 1983 claims, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226 (3d Cir. 1977), a state remedy available to rectify the wrong complained of, renders the alleged wrongdoing less offensive than it would be otherwise. *See Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Recognizing a *de minimis* doctrine in civil rights litigation, the Supreme Court has said, "there is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright, supra*, 430 U.S. at 674, 97 S.Ct. at 1414. Thus the question posed by this case is whether unlawful traffic stops are sufficiently intrusive to be of constitutional magnitude or, stated another way, whether freedom from arbitrary traffic stops is a constitutionally protected right.

■ The Delaware Supreme Court recently answered this question in the affirmative holding "that a random stop of a motorist in the absence of specific articulable facts which justify the stop by indicating a reasonable suspicion that a violation of the law has occurred is constitutionally impermissible and violative of the Fourth and Fourteenth Amendments to the United States Constitution." *Delaware v. Prouse*, 382 A.2d 1359 at p. 1364 (Del.Sup.1978). Whether there is a justification for the stop in the instant case is a matter in dispute and one which shall be resolved at trial. In the interim, the Court cannot conclude that the stop of plaintiff is so incidental to his constitutional rights as to fail to state a claim under section 1983.

The freedom to go about one's business peaceably is a cherished liberty interest in our country protected by the Constitution. *Shapiro v. Thompson*, 394 U.S. 618, 629–30, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Carroll v. United States*, 267 U.S. 132, 153–54, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Legitimate restraints on our freedom of mobility have emerged only in deference to countervailing values of even greater merit. Thus, the stop and frisk procedure approved in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is limited to situations where the officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." *Id.* at 30, 88 S.Ct. at 1884. In so holding the court reaffirmed that a stop is synonymous with an arrest and that being subjected to a stop and frisk is more than a "petty indignity." *Id.* at 7, 88 S.Ct. 1868. But plaintiff was not subjected to the indignity of a frisk and complains solely of the stop. Therefore defendant rightfully points to *Commonwealth of Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), a case more closely on point.

The *Mimms* Court held that upon issuance of a lawful traffic summons, the officer, for his own safety, may order a motorist to get out of his car. Describing this "additional intrusion . . . as de minimis," the Supreme Court found that insisting on the motorist's leaving his car is "not a 'serious intrusion' upon the sanctity of the person," *id.* 98 S.Ct. at 333 quoting *Terry v. Ohio, supra*, 329 U.S. at 17, 88 S.Ct. 1868, and concluded that "what is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety."

*Mimms* differs from the instant case in two critical aspects. First the issue in *Mimms* as stated by the Court was to "weigh the intrusion into the driver's per-

cution by the Defendants, which have been a serious burden to him," but in briefs and oral argument counsel disclaimed reliance on anything but the stop itself.

sonal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified but by the order to get out of the car." Thus, the Court expressly confined its evaluation to the parameters flowing from a lawful stop and not the stop itself. A not unreasonable inference flowing from *Mimms* is that to the extent greater consequences flow to a motorist from a lawful stop, the more carefully a traffic stop must be considered in the first place.

Second, *Mimms*, noting significant dangers to officers' making traffic stops, used a balancing test weighing the governmental interest in protecting officers against the liberty interest of the motorist. No such balance exists in the case at bar. Assuming without deciding that the traffic stop was unlawful, made without probable cause and without good faith, there was no immediate countervailing interest to be balanced against that of the motorist to go his own way.

Whether the stop standing alone raises an issue of constitutional magnitude so as to establish a federal question is answered without benefit of precedent or guidance from the higher courts. The *Ingraham* Court, noting that the Constitution is not concerned with a *de minimis* level of imposition, nonetheless found that corporeal punishment in schools implicated the liberty interests of children and therefore their recognized constitutional rights. Thus, although the Court acknowledged a constitutional threshold, it provided no guidance in establishing it. Other courts noting that some claims are "too trivial to command the attention of a busy court" nonetheless have proceeded to decide whether a teacher has a first amendment or liberty interest in choosing not to wear a necktie in his classroom. *East Hartford Education Association v. Board of Education of East Hartford*, 562 F.2d 838, 856 (2d Cir. 1977). The Court is unaware of any case which was dismissed on grounds that the violation of a cognizable constitutional right was too trivial to warrant constitutional protection. The *Ingraham* Court's adoption of common law remedies as adequate to address the common law practice of administering physical punishment to school children is not to the contrary.

The Third Circuit Court of Appeals has not as yet recognized the *de minimis* doctrine in civil rights actions. In *Russell v. Bodner*, 489 F.2d 280 (3d Cir. 1973), the Court held that a prisoner stated a cause of action under the Civil Rights Act for the unauthorized taking of seven packs of cigarettes by a prison guard. In a case such as the instant matter, it is superficially vexing to entertain an action in a federal court for something so trivial as a police stop for a traffic ticket especially since the same alleged facts constitute torts cognizable under state law. On the other hand, the "police function is . . . [is] one of the basic functions of government, especially in [our] complex modern society where police presence is pervasive. . . . [Police officers] are clothed with authority to exercise an almost infinite variety of discretionary powers." *Foley v. Connelie*, —— U.S. ——, ——, 98 S.Ct. 1067, 1071, 55 L.Ed.2d 287 (1978).

Without guiding precedent in the use of the *de minimis* doctrine, the Court is disinclined to introduce it into the area of police activity. Law enforcement officers by virtue of their position exert a position of authority and influence uncommon to other representatives of the state. Consequently, police conduct must be carefully scrutinized if the individual is to have a meaningful "right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975).

■ With the ever increasing number of section 1983 suits brought in federal court, it may well be time to reevaluate the absence of an exhaustion requirement and to explore application of the *de minimis* doctrine. *United States ex rel. Ricketts v. Lightcap, supra*, 567 F.2d at 1233–1236 (VanDusen, J. concurring); *Hardwick v. Ault*, 517 F.2d 295, 297 (5th Cir. 1975); *McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975); *Note*, Developments in the Law— Section 1983 and Federalism, 90 *Harv.L.*

*Rev.* 1135, 1264 (1977). However, given the broad powers vested in police officers, application of the *de minimis* doctrine to police conduct is not a logical starting point. These are matters properly for Congress or appellate tribunals.

For the foregoing reasons, defendant's motion to dismiss is denied.