634 F.2d 900
 24 Fair Empl.Prac.Cas. 1373,
25 Empl. Prac. Dec. P 31,526
Georgia PATSY, Plaintiff-Appellant,
v.
FLORIDA INTERNATIONAL UNIVERSITY, Board of Regents of the
State of Florida, abody corporate, for and on
behalf of Florida International
University, Defendant-Appellee.
 No. 79-2965.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 22, 1981.
 
 Denis Dean, Sr., Dean & Hartman, Miami, Fla., for plaintiff-appellant.
 Mahoney, Hadlow & Adams, Jeffrey H. Klink, Jacksonville, Fla., Mahoney, Hadlow & Adams, John W. Kozyak, Miami, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, and THOMAS A. CLARK, Circuit Judges.*
 RONEY, Circuit Judge:
 
 
 1
 This section 1983 sex and race discrimination suit was dismissed on motion for failure to allege exhaustion of state administrative remedies. A panel of this Court reversed on the ground that exhaustion of administrative remedies is not a prerequisite of a section 1983 suit. Patsy v. Florida International University, 612 F.2d 946 (5th Cir. 1980). We took this case en banc for the purpose of considering whether to adhere to an automatic rule that no section 1983 plaintiff need pursue state administrative procedures before asserting federal court jurisdiction, regardless of the adequacy of relief that might be there available, or whether to adopt a more flexible rule that would require such exhaustion in appropriate cases. Deciding to take the latter course, we remand the case to the district court for it to consider the adequacy of administrative procedures available to this plaintiff in light of the rule here adopted.
 
 
 2
 Plaintiff is a white female employed as a secretary at Florida International University (FIU). Asserting 28 U.S.C.A. § 1343(3) jurisdiction of her action authorized by 42 U.S.C.A. § 1983, plaintiff alleges that during her employment with FIU, she has applied for numerous employment openings in the university for which she was clearly qualified but has been uniformly rejected because FIU has discriminated against her on the basis of her race and sex. Plaintiff contends that by seeking out individuals from minority groups to hire and promote and by segregating applicants' files according to race and sex, FIU is engaged in a pattern and practice of discrimination, in violation of the Constitution and laws of the United States.
 
 
 3
 Plaintiff named as defendant the Board of Regents of the State of Florida on behalf of Florida International University. She prayed that the court remedy the discrimination against her by promoting her to the next available position to which she had applied and for which she was qualified or, in the alternative, to award $50,000 actual and punitive damages. The Board of Regents moved to dismiss on the ground that plaintiff had failed to exhaust her administrative remedies. The district court granted the motion to dismiss.
 
 
 4
 In this en banc rehearing we consider whether, under relevant Supreme Court holdings, exhaustion of adequate state administrative remedies can ever be a prerequisite to actions under section 1983 and, if so, whether we should adopt such a rule in this Circuit. In concluding that exhaustion of state administrative proceedings should sometimes precede federal court consideration of section 1983 claims, we first, examine the exhaustion doctrine as traditionally applied to suits against Government officers, second, review the Supreme Court cases to determine that they do not foreclose a flexible exhaustion rule in section 1983 cases, third, examine the state of the law in the other Courts of Appeals, which reveals a conflict on the point, and fourth, consider the objections to and the policy considerations for the implementation of an exhaustion requirement. Deciding after this analysis that exhaustion should be required under certain standards, we then review the case before us and conclude that the district court's dismissal should be vacated and the case remanded for full consideration of the adequacy of the administrative procedures available to plaintiff to determine whether exhaustion is required in light of our opinion in this case.
 
 I. The Exhaustion Doctrine
 
 5
 It has long been established that a party will normally be denied judicial relief for injury until available administrative remedies have been exhausted. As the Supreme Court stated in one of the leading cases dealing with the exhaustion doctrine, Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938):
 
 
 6
 (T)he long settled rule of judicial administration (is) that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.
 
 
 7
 The rule applies in federal courts to both state and federal administrative remedies, and has been said to be of special force in federal-state cases. Illinois Commerce Commission v. Thomson, 318 U.S. 675, 63 S.Ct. 834, 87 L.Ed. 1075 (1943); Natural Gas Pipeline Co. v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276 (1937); Gilchrist v. Interborough Rapid Transit Co., 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652 (1929). As the Court explained in Public Service Commission v. Wycoff Co., 344 U.S. 237, 246-47, 73 S.Ct. 236, 241-42, 97 L.Ed. 291 (1952):
 
 
 8
 Even when there is no incipient federal-state conflict, the declaratory judgment procedure will not be used to pre-empt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review....
 
 
 9
 ... State administrative bodies have the initial right to reduce the general policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact.
 
 
 10
 Many of the important policy purposes of the doctrine requiring exhaustion of federal administrative proceedings as a precedent to judicial relief were articulated by the Supreme Court in McKart v. United States, 395 U.S. 185, 193-95, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969): (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."
 
 
 11
 When the complaining party seeks federal court review of state action, the reasons stated in McKart are overlaid by forceful considerations of federalism and comity which counsel the exhaustion of administrative relief before the intervention of the federal judiciary into the dispute. K. Davis, Administrative Law § 20.01 (Supp.1970). Cf. National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (state autonomy in certain employment decisions); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (non-intervention of federal courts in pending state court action absent exceptional circumstances); Railroad Commission v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1949) (abstention because of "scrupulous regard for the rightful independence of the state governments").
 
 
 12
 Like most judicial doctrines, the requirement of exhaustion of administrative remedies is subject to numerous practical exceptions which result from the efforts of the courts to balance the rights of the claimants against the substantial policy factors favoring the rule. Briefly the traditional exceptions are first, exhaustion is not required when the prescribed administrative remedy is plainly inadequate because either no remedy is available, the available remedy will not give relief commensurate with the claim, or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury. Walker v. Southern Railway, 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730 (1956); United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); United States Alkali Export Association v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945); 3 K. Davis, Administrative Law § 20.07 (1958 and Supps. 1970, 1976 & 1978).
 
 
 13
 Second, when the claimant seeks to have a legislative act declared unconstitutional and administrative action will leave standing the constitutional question, exhaustion is not required. Public Utilities Commission v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); Davis, supra at § 20.04.
 
 
 14
 Third, courts do not require exhaustion when the question of the adequacy of the administrative remedy is for all practical purposes co-extensive with the merits of the plaintiff's claim, such as when, for example, the plaintiff contends that the administrative system itself is unlawful or unconstitutional in form or application. Fuentes v. Roher, 519 F.2d 379 (2d Cir. 1975); Finnerty v. Cowen, 508 F.2d 979, 982-83 (2d Cir. 1974).
 
 
 15
 Fourth, exhaustion of administrative remedies is not required if it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected. City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934); Montana National Bank v. Yellowstone County, 276 U.S. 499, 48 S.Ct. 331, 72 L.Ed. 673 (1928).
 
 
 16
 It should be noted that the application of the exhaustion doctrine with its traditional exceptions is far from an exact science. Indeed, as Professor Davis has stated, in applying the exhaustion rule, "judicial action is variable and difficult or impossible to predict." Davis, supra at § 20.01 (1958). This is because "(a)pplication of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." McKart v. United States, 395 U.S. at 193, 89 S.Ct. at 1662. In most situations the decision to require exhaustion or not comes after careful analysis and thoughtful balancing of the interests for and against exhaustion. The question presented in this case is whether the Court in section 1983 cases may and should take the analytical approach normally applied whenever administrative remedies are available or whether it should automatically except every section 1983 case from the requirement, as seems to have been done in many cases.
 
 II. Exhaustion in Section 1983 Cases
 A. Supreme Court Cases
 
 17
 The initial inquiry in this determination is whether the point is open for decision under cases that have been decided by the Supreme Court. Although the simple statement that "exhaustion of administrative remedies is not required in section 1983 cases" has support in the language of some opinions, a careful analysis of the holdings of the Supreme Court leads us to conclude that there is room for this Court to develop an analytical rule.
 
 
 18
 The Supreme Court held in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that it is not a prerequisite to filing an action under 42 U.S.C.A. § 1983 that state judicial remedies be exhausted. The question of administrative remedies was not before the Court. In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), a subsequent section 1983 case, the Supreme Court was confronted with the issue of exhaustion of both judicial and administrative remedies. McNeese was a school desegregation case in which the primary administrative remedy available was that the residents of the school district could file a complaint with the Superintendent of Public Instruction alleging racial segregation. He could then set a hearing and, after the hearing, if he decided the allegations were substantially correct he could request the Illinois Attorney General to file suit. Alternatively, it was suggested that the Superintendent could refuse to certify the school and then withhold state funds.
 
 
 19
 The Court first stated that it had "previously indicated that relief under the Civil Rights Act may not be defeated because relief was not sought under state law," and quoted the language from Monroe v. Pape which held that state judicial remedies need not be exhausted. 373 U.S. at 671, 83 S.Ct. at 1435. The Court then held that the plaintiffs did not have to exhaust state judicial remedies and that abstention was inappropriate. Upon reaching the question of administrative remedies, the Court said:
 
 
 20
 Moreover, it is by no means clear that Illinois law provides petitioner with an administrative remedy sufficiently adequate to preclude prior resort for protection of their federal rights.
 
 
 21
 373 U.S. at 674-75, 83 S.Ct. at 1437. After examining the administrative remedies at some length and noting their ineffectiveness in responding to petitioners' complaints, the Court concluded that "(w)hen federal rights are subject to such tenuous protection, prior resort to a state proceeding is not necessary." Id. at 676, 83 S.Ct. at 1438.
 
 
 22
 It is quite clear that exhaustion of administrative remedies would not have been required in McNeese under the traditional rule because a clear-cut exception-inadequacy of administrative remedy-was applicable. In fact, the administrative process could afford no direct relief. Nevertheless, from McNeese and subsequent Supreme Court pronouncements relying on McNeese has grown the rule, followed by a majority of the circuits, that exhaustion of state administrative remedies is absolutely never required in section 1983 suits. Whether or not such a sweepingly broad and inflexibly wooden rule was ever intended by the Supreme Court, the following examination persuades us that the Supreme Court does not now follow such a rule in practice and that if such a rule is ever to be sustained by that Court, it would be only after the issue is squarely presented and thoroughly considered.
 
 
 23
 In its two most recent section 1983 cases involving exhaustion of state administrative remedies, the Supreme Court's analysis and language strongly suggest that it does not adhere to a rigid no-exhaustion rule. Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), was a section 1983 action involving the New York State Racing and Wagering Board. Plaintiff Barchi was the trainer of a horse found to be drugged following a race. Plaintiff's license as a trainer was temporarily suspended without a hearing under a state regulation making the trainer responsible for the horse's condition and presuming that if drugs are found the trainer is at fault. New York procedures permitted a suspended licensee to have a post-suspension hearing but did not permit the suspension to be stayed during the course of the hearings. Furthermore, neither the statute nor the regulations specified a time limit within which a hearing had to be heard and the Board was permitted 30 days after the hearing in which to issue a final order.
 
 
 24
 Without resorting to these post-suspension hearing procedures, Barchi filed suit alleging that the state statute was unconstitutional because it permitted his license to be suspended without a prior hearing to determine his culpability and because a summary suspension could not be stayed pending a post-suspension hearing by the Board. One of the grounds on which the state officers opposed the suit was that Barchi should have exhausted his administrative remedies prior to commencing his court action.
 
 
 25
 In concluding that the lack of a timely post-suspension hearing was unconstitutional, the Court considered the state's exhaustion argument:
 
 
 26
 We reject appellants' further contention that Barchi should not have commenced suit prior to exhausting the procedure contemplated under § 8022. Under existing authority, exhaustion of administrative remedies is not required when "the question of the adequacy of the administrative remedy ... (is) for all practical purposes identical with the merits of (the plaintiff's) lawsuit." Gibson v. Berryhill, 411 U.S. 564, 575, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973).
 
 
 27
 443 U.S. at 63 n.10, 99 S.Ct. at 2648 n.10 (brackets and deletions in original). Significantly, the Court did not merely recite a blanket no-exhaustion rule. Instead, it excused Barchi's failure to comply with the procedures provided by the state by focusing on one of the usual exceptions to the general rule that state administrative remedies should be exhausted.
 
 
 28
 Justice Brennan in a concurring opinion agreed that exhaustion was not required and, like the majority, did not rely on a rigid blanket rule. Rather, he found two exceptions to the general rule that exhaustion is required. First, he said that the district court properly declined to require exhaustion of "state remedies that were themselves being challenged as unconstitutional." 443 U.S. at 68-69, 99 S.Ct. at 2651. Second, he described the administrative procedures as an "exercise in futility" and stated that for that reason the plaintiff should not be required to exhaust his state administrative remedies. Id. at 74, 99 S.Ct. at 2654.
 
 
 29
 By going to the trouble of finding and using traditional exceptions to the exhaustion rule, the Justices plainly did not adhere to a rigid rule that exhaustion is never required in section 1983 cases. That the Court would permit a more flexible approach is supported by Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). The plaintiffs there were licensed optometrists who sought to enjoin proceedings against them pending before the Alabama Board of Optometry. In their section 1983 suit they alleged the Board was biased and could not provide a fair and impartial hearing. The Supreme Court agreed with the three-judge district court that the plaintiffs should not be required to exhaust state administrative remedies, but specifically left open the question whether the non-exhaustion exception in section 1983 cases was "invariably the case."
 
 
 30
 In the instant case the matter of exhaustion of administrative remedies need not detain us long. Normally when a State has instituted administrative proceedings against an individual who then seeks an injunction in federal court, the exhaustion doctrine would require the court to delay action until the administrative phase of the state proceedings is terminated, at least where coverage or liability is contested and administrative expertise, discretion, or factfinding is involved. But this Court has expressly held in recent years that state administrative remedies need not be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983. McNeese v. Board of Education, 373 U.S. 668 (83 S.Ct. 1433, 10 L.Ed.2d 622) (1963); Damico v. California, 389 U.S. 416 (88 S.Ct. 526, 19 L.Ed.2d 647) (1967). Whether this is invariably the case ... is a question we need not now decide; for the clear purport of appellees' complaint was that the State Board of Optometry was unconstitutionally constituted and so did not provide them with an adequate administrative remedy requiring exhaustion. Thus, the question of the adequacy of the administrative remedy, an issue which under federal law the District Court was required to decide, was for all practical purposes identical with the merits of appellees' lawsuit.
 
 
 31
 411 U.S. at 574-75, 93 S.Ct. at 1695-96 (emphasis added, footnotes omitted).
 
 
 32
 The significance of this language was not lost on the two concurring justices, Justice Marshall and Justice Brennan. From their brief one-paragraph concurrence, it was clear to them that the majority of the Court may have been making room for a holding that exhaustion may sometimes be required.
 
 
 33
 I join the opinion of the Court except insofar as it suggests that the question remains open whether plaintiffs in some suits brought under 42 U.S.C. § 1983 may have to exhaust administrative remedies.
 
 
 34
 411 U.S. at 581, 93 S.Ct. at 1699 (Marshall, J., concurring).
 
 
 35
 We are aware of the numerous instances in which the Court has stated in opinions, apparently quite categorically, that exhaustion is not required in section 1983 cases. But the simple fact of the matter, as one commentator has noted, is that "in all the cases in which the Supreme Court has articulated its no-exhaustion rule, the state administrative remedies were sufficiently inadequate that exhaustion would not have been appropriate in any event." Developments in the Law-Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1274 (1977). Accord, Secret v. Brierton, 584 F.2d 823 (7th Cir. 1979); Blanton v. State University of New York, 489 F.2d 377, 383-84 (2d Cir. 1973); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases, 41 U.Chi.L.Rev. 537, 544-47 (1974). Individual examination of each section 1983 case mentioning exhaustion of state administrative remedies bears this out. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) (per curiam); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); and Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) (per curiam), all involved welfare recipients seeking to have various state laws or regulations declared unconstitutional. In each case it was beyond the authority of the administrative agency to declare a state statute or regulation unconstitutional and thus the administrative remedies were clearly inadequate. Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) (per curiam ) and Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam ) were both cases in which state prisoners sued prison officials. In Houghton, the Supreme Court specifically noted that to require exhaustion of administrative remedies would be to demand a futile act. In Wilwording, the lower court had suggested that plaintiffs should be required to exhaust certain state judicial remedies, Wilwording v. Swenson, 439 F.2d 1331 (8th Cir. 1971), so any language about state administrative remedies was dictum. Similarly, in Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) and Ellis v. Dyson, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975), the issue before the Court was whether plaintiffs could enjoin possible future state criminal prosecutions, so the discussion of exhaustion of state administrative remedies was merely dictum. On the basis of this authority, it cannot be fairly said that the holdings of the Supreme Court require lower courts to apply mechanically a no-exhaustion-ever rule in section 1983 cases. This analysis of the Supreme Court cases is essentially that also made by the Second and Seventh Circuits in Eisen v. Eastman, 421 F.2d at 567-69; Blanton v. State University of New York, 489 F.2d at 383-84; and Secret v. Brierton, 584 F.2d at 825-28.
 
 
 36
 In addition to the strong statements in Gibson v. Berryhill and Barry v. Barchi and the weakness of Supreme Court authority for an ironclad rule, there are a number of other indications that the Supreme Court would permit a flexible approach. In Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), Justice Powell noted in his concurrence:
 
 
 37
 In some instances the Court has drifted almost accidentally into rather extreme interpretations of the post-Civil War Acts. The most striking example is the proposition, now often accepted uncritically, that 42 U.S.C. § 1983 does not require exhaustion of administrative remedies under any circumstances. This far-reaching conclusion was arrived at largely without the benefit of briefing and argument.
 
 
 38
 427 U.S. at 186 n.*, 96 S.Ct. at 2602 n.* (Powell, J., concurring).
 
 
 39
 Recently, three other members of the Court have made it clear that they do not consider the no-exhaustion exception in section 1983 cases to be the final word. In his dissent from the denial of certiorari in City of Columbus v. Leonard, 443 U.S. 905, 99 S.Ct. 3097, 61 L.Ed.2d 872 (1979), Justice Rehnquist, joined by Chief Justice Burger and Justice Blackmun, declared the time had come to re-examine the case underpinning the no-exhaustion exception, Monroe v. Pape.
 
 
 40
 (T)he time may now be ripe for a reconsideration of the Court's conclusion in Monroe that the "federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. (365 U.S.) at 183 (81 S.Ct. at 481). As noted earlier, the Court believed that this conclusion followed from the purpose of the Civil Rights Act "to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice." Id. at 174 (81 S.Ct. at 477) (emphasis added). But this purpose need not bar exhaustion where the State can demonstrate that there is an available and adequate state remedy. Indeed, scholarly commentators have soundly criticized the Court for holding to the contrary.... I would take the opportunity afforded by this case to reconsider the Court's conclusion as to exhaustion of state remedies. Not only is the Court's conclusion open to serious question, as noted earlier, but the conclusion was reached in an almost off-the-cuff manner, in distinct contrast to that portion of Monroe overruled by the Court in Monell (436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611).
 
 
 41
 443 U.S. at 910-11, 99 S.Ct. at 3101. (Rehnquist, J., dissenting).
 
 
 42
 In at least one instance the Supreme Court declined to follow the rule that a section 1983 action is not precluded by failure to exhaust state remedies. The plaintiff in Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), was unsuccessful in a state nuisance action aimed at shutting down his theater for a year, but instead of appealing the judgment within the state court system, immediately filed a section 1983 action seeking declaratory and injunctive relief. Although disclaiming any intention to undermine Monroe v. Pape, the Supreme Court held that, absent Younger -type extraordinary circumstances, the plaintiff was required to exhaust his state appellate remedies before he could commence a section 1983 action in federal court. While this holding provides no direct support for eliminating an exhaustion of administrative remedies requirement, it is another significant piece of evidence that the no-exhaustion rule is not etched in stone, at least as far as the Supreme Court is concerned.
 
 
 43
 Our discussion of Supreme Court cases is not intended to suggest that they compel the conclusion we reach here. In truth they have been analyzed with much the same premise as Judge Friendly articulated in Eisen v. Eastman, 421 F.2d 560, 568 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), where he said:
 
 
 44
 (T)he consequences of compelling federal courts to pass upon all complaints of unconstitutional acts by state and local officials at the lowest level, without any requirement of appeal to higher ones, would be so destructive to proper concepts of federalism and so needlessly burdensome to the federal courts that it is appropriate to examine whether the decisions have not been given a broader sweep than the Court intended.
 
 
 45
 Additionally we are concerned about a doctrine which opens the doors of the federal courthouse immediately to a citizen suing a state officer for violations of constitutional or federal law, when the same doors would be closed to that citizen suing a federal officer for a similar violation until administrative remedies had been pursued. A concern for this unevenness of treatment of state officials and federal officials by federal courts may necessarily create an atmosphere which welcomes the result we here reach. In any event, our review of the cases convinces us that they do not prevent a decision to take an analytical rather than a mechanical approach to the question of exhaustion of administrative remedies and to require in appropriate cases that adequate state administrative remedies be exhausted before a section 1983 plaintiff comes into federal court.
 
 B. Circuit Court Cases
 
 46
 Since this Court is sitting en banc, neither opinions of prior panels of this Court nor the decisions of other circuits control this deliberation. A review of prior Court of Appeals cases is helpful, however, to an informed decision. The discovery that the circuits are divided on the point in cases which stand uncorrected by the Supreme Court bolsters the conclusion that the door has not been closed to a non-mechanical rule of exhaustion.
 
 
 47
 Six circuits, including this one, the Third, Fourth, Sixth, Eighth and Tenth, have decided cases that apparently hold that exhaustion of state administrative remedies is never a prerequisite to a section 1983 suit. United States ex rel. Ricketts v. Lightcap, 567 F.2d 1226 (3rd Cir. 1977); McCray v. Burrell, 516 F.2d 357 (4th Cir. 1975), cert. dismissed as improvidently granted, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); Hardwick v. Ault, 517 F.2d 295 (5th Cir. 1975); Jones v. Metzger, 456 F.2d 854 (6th Cir. 1972); Simpson v. Weeks, 570 F.2d 240 (8th Cir. 1978), cert. denied, 443 U.S. 911, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979); Gillette v. McNichols, 517 F.2d 888 (10th Cir. 1975). These decisions have simply concluded that the Supreme Court has laid down a blanket rule.
 
 
 48
 Four other circuits, the First, Second, Seventh and Ninth, have apparently determined there is no such airtight rule, and have used a more flexible approach. See generally Annot., Exhaustion of State Administrative Remedies as Prerequisite to Federal Civil Rights Action Based on 42 U.S.C.S. § 1983, 47 A.L.R. Fed. 15 (1980).
 
 
 49
 The Second Circuit has consistently ruled that a section 1983 action cannot be maintained if the plaintiff has failed to exhaust adequate state administrative remedies and if none of the other traditional exceptions to the exhaustion rule applies. Gonzalez v. Shanker, 533 F.2d 832 (2d Cir. 1976); Fuentes v. Roher, 519 F.2d 379 (2d Cir. 1975); Blanton v. State University of New York, 489 F.2d 377 (2d Cir. 1973); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). The Second Circuit reads the Supreme Court cases as merely condemning a "wooden application" of the exhaustion doctrine to section 1983 cases. 421 F.2d at 569.
 
 
 50
 The Seventh Circuit in Secret v. Brierton, 584 F.2d 823 (7th Cir. 1978), after analyzing the recent Supreme Court cases, decided that a non-rigid approach to exhaustion is permitted under the Supreme Court decisions and that a state prisoner should exhaust his administrative remedies before filing a section 1983 claim in federal court alleging that his personal property was unlawfully confiscated without due process of law.
 
 
 51
 The Ninth Circuit "has not gone so far" as to infer a blanket no-exhaustion-under-any-circumstances rule from the Supreme Court cases. Canton v. Spokane School District # 81, 498 F.2d 840, 844 (9th Cir. 1974). In that circuit, exhaustion of adequate administrative remedies is required if the plaintiff seeks to forestall a threatened future deprivation of civil rights. Id. at 844-45. See also Bignall v. North Idaho College, 538 F.2d 243, 246 (9th Cir. 1976); Toney v. Reagan, 467 F.2d 953 (9th Cir. 1972), cert. denied, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973). Exhaustion is not required if plaintiff claims relief from or compensation for a deprivation of civil rights which has already occurred. Whitner v. Davis, 410 F.2d 24, 28 (9th Cir. 1969).
 
 
 52
 The First Circuit in a footnote discussion in Raper v. Lucey, 488 F.2d 748 (1st Cir. 1973), focused on the issue of ripeness. While rejecting a general or automatic requirement of administrative exhaustion in section 1983 cases, it adhered to the necessity for ripeness "to the extent that there must be at least some definitive administrative or institutional determination before a § 1983 action may arise." 488 F.2d at 751 n.3. Subscribing to the view expressed in our own case of Stevenson v. Board of Education, 426 F.2d 1154, 1157 (5th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970), the First Circuit requires a section 1983 plaintiff to pursue the administrative process until the action has sufficient institutional finality to be ripe for adjudication. Raper v. Lucey, 488 F.2d at 751 n.3. The court in Palmigian v. Mullen, 491 F.2d 978, 981 n.5 (1st Cir. 1974), left open whether in section 1983 prisoner's actions an inmate may be required to exhaust readily available and adequate administrative procedures specially designed for the very grievance in issue.
 
 III. Objections and Policy Considerations
 
 53
 Having determined that under relevant Supreme Court authority this Court may take an analytical approach to the question of exhaustion of state administrative remedies in section 1983 cases, and having seen that several of our sister circuits have already done so, we must now decide whether we should take such an approach.
 
 
 54
 There are two basic arguments for a blanket rule that no exhaustion of administrative remedies is required in any section 1983 case. First, it is argued that an exhaustion requirement would thwart the purposes of Congress in enacting section 1983. Second, it is argued that the elimination of an exhaustion prerequisite is justified because, given the nature of the rights protected by section 1983, claims for their protection are entitled to be adjudicated in the federal courts.
 
 
 55
 Although an additional argument could be made that a mechanical rule is easy to understand and apply, we reject it out of hand because of the important interests that might be unthinkingly sacrificed on that altar of expediency. Instead, we examine the two principal arguments that could reasonably support a no-exhaustion rule.
 
 
 56
 In Monroe v. Pape, the Supreme Court examined at length the historical background and legislative intent of Congress in enacting section 1983. The Court discerned three main aims for the legislation: (1) to override certain kinds of state laws that were inconsistent with federal law; (2) to provide a federal remedy where state law was inadequate; and (3) to provide a federal remedy where the state remedy was available in theory but not in practice. 365 U.S. at 173-74, 81 S.Ct. at 476-77. In the view of the Court, Congress was least concerned with nullifying state laws. Its quarrel was not with state statutes then on the books, but with their lack of even-handed enforcement. Id. at 174-75, 81 S.Ct. at 477. Discriminatory state statutes present, however, the strongest case for not requiring exhaustion, because in such cases administrative procedures are unlikely to provide any significant relief. But as one commentator has persuasively argued, even in the case of discriminatory state laws,
 
 
 57
 categorical rejection of exhaustion is inappropriate. Assuming a state statute is inconsistent with federal law, exhaustion may be appropriate for the purpose of developing a factual record, receiving the benefit of agency expertise in the administration of its statutes and rules, and allowing the agency to limit the application of the statute consistently with federal law. Only where a factual record is irrelevant and the statute is both facially unconstitutional and incapable of any appropriate construction is exhaustion without value.
 
 
 58
 Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases, 41 U.Chi.L.Rev. 537, 553 (1974) (footnote omitted).
 
 
 59
 Far from thwarting congressional intent, a requirement of exhaustion of adequate state remedies is wholly consistent with the second and third congressional purposes identified in Monroe v. Pape, that is, the provision of a federal remedy where the state remedy is inadequate on its face or in practice. "If Congress sought to provide a federal remedy where the state remedy is not adequate in fact, it follows that the legislative intent required adequate remedies to be exhausted." Comment, 41 U.Chi.L.Rev. at 553. Although the federal courts must inquire into the actual efficacy of the state administrative procedure, once it is found to provide an adequate remedy, an exhaustion requirement is consistent with a section 1983 purpose to provide a federal remedy where a state remedy is inadequate or not available in practice.
 
 
 60
 Regardless of congressional purpose or intent, however, the question remains as to whether the nature of every section 1983 claim entitles it to immediate adjudication in the federal courts. McNeese v. Board of Education, 373 U.S. at 674, 83 S.Ct. at 1437. It must be kept in mind that we are here dealing with state administrative remedy exhaustion, not state judicial exhaustion. Unlike judicial actions, state administrative proceedings carry no res judicata or collateral estoppel baggage into federal court. Resorting to appropriate and adequate state administrative remedies in no way precludes federal court protection of federal constitutional and statutory rights. At most it can only delay federal court action, at best it could eliminate the need for such action. The proper focus should be on relief from wrong, and the adequacy of the administrative system to provide a remedy, not on the federal origin of the right that was violated.
 
 
 61
 There are important policy reasons for requiring a potential section 1983 plaintiff to exhaust adequate and appropriate state administrative remedies. The following discussion does not necessarily arrange them in the order of importance, nor does it attempt to delve into all the nuances of argument for and against. The purpose here is to set forth the considerations which to this Court are controlling.
 
 
 62
 First, exhaustion promotes a wiser allocation of judicial resources, and does so in a variety of ways. To begin with the most obvious, the administrative process may resolve the dispute in a manner wholly satisfactory to the complainant. In that case, no judicial action at all will be required. The administrative process may also serve to focus the contentions of the parties and eliminate extraneous issues, thereby simplifying any resulting litigation. In cases where the facts are significant, during the administrative process the agency can sift through complicated factual matters and reduce issues of fact, thus aiding the court in making its findings of fact. Yet another potential benefit is that the agency may be able to construe or interpret statutes or regulations in such a way as to resolve the complainant's grievance or to avoid a constitutional conflict. Permitting the administrative process to function may also allow the agency to define the contours of a yet uninterpreted statute or regulation and alleviate the necessity of having the federal courts guess about its meaning.
 
 
 63
 Second, a reasonable exhaustion requirement will assure that "the action complained of is final within the institution in the sense that it is ripe for adjudication." Stevenson v. Board of Education, 426 F.2d 1154, 1157 (5th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970). If the university or the Board of Regents is being sued, it should be clear that the university or the Board is responsible for the alleged wrong, instead of some first echelon functionary. As then Chief Judge Brown stated:
 
 
 64
 (I)t must be clear that the body having responsibility, in response to specific complaints, has for the legal entity involved, failed or refused to take corrective action. The street light in my block may be inadequate, and unequal to another neighborhood, but until I can seek a § 1983 order from a federal Judge, I must at least allow the city of Houston to turn me down. This is good sense. It is good federalism. It is good nineteen eighty-threeism.
 
 
 65
 Hawkins v. Town of Shaw, 461 F.2d 1171, 1177 (5th Cir. 1972) (en banc) (Brown, C. J., concurring) (emphasis in original). Involved in the ripeness concept are notions of fairness. Many would think it simply unfair to be summoned into federal court to defend against a constitutional claim where they have contrary policies and machinery to right alleged wrongs in an orderly fashion, but are given no reasonable opportunity for that machinery to operate.
 
 
 66
 Third, a reasonable exhaustion requirement will improve the administrative process itself. Prompted by appropriate judicial decisions, the state administrative agency will have the incentive and be able to hone its procedures to comply with federal requirements, both procedural and substantive, without losing the advantage of the agency's expertise, its familiarity with local conditions and awareness of the impact of particular action on related areas, and its desire to correct errors of lower level functionaries within the agency. The proper roles of the officials within the agency will be solidified when the errors of lower level functionaries are corrected within the agency instead of by the courts.
 
 
 67
 Fourth, administrative remedies are generally simpler, speedier and less expensive for the parties themselves. Under a no-exhaustion rule plaintiffs, of course, would have a choice between court and administrative procedures. Defendants, however, have a genuine interest in solving conflicts with the least court cost and attorney fees. Failure to require utilization of administrative remedies which might well achieve the same or a better remedy than could be obtained in court is wasteful of a litigant's resources.
 
 
 68
 Fifth, of serious importance to the judicial system's response to the concept of dual constitutional government, a requirement that a plaintiff complaining of state action must first exhaust state administrative remedies is supported by fundamental notions of federalism and comity. The policy here has at least three significant bases. First, the citizens of a state have a constitutionally based interest in autonomously running the state business and government to the fullest extent possible, until it collides with the federal constitution. The constitutional collision should come, if at all, at the end of state action, not at the beginning. An early law review note on the subject articulates this concern as follows:
 
 
 69
 A strong state interest is reflected in the establishment of a comprehensive scheme of regulation; authority over the subject matter of the dispute has been vested in an expert supervisory body, far more familiar than a federal court with local factors that legitimately affect administration. Moreover, the states, as well as the federal government have an interest in providing a means whereby official abuse can be corrected without resort to lengthy and costly trial.... (A) federal court adjudicating a suit under the Civil Rights Act must consider the implications of division of responsibility under a federal system of government. The development of the exhaustion doctrine represented, at least in part, an attempt to minimize intergovernmental friction by deferring to the maximum extent possible to the interest of the states in ordering and regulating their own affairs.
 
 
 70
 Note, Exhaustion of State Remedies Under the Civil Rights Act, 68 Colum.L.Rev. 1201, 1206-07 (1968) (footnotes omitted). Second, much of the work of the federal courts even since that law note was written has been to establish rules and regulations under which the states must operate to meet due process and other constitutional requirements. That effort is of little practical value if the parties the courts have sought to protect by improving the state procedural structure can turn their backs on state administrative remedies and go directly into a federal forum. Good faith efforts by the states to provide protection for such parties are discouraged when federal courts encourage ignoring state administrative remedies. Third, plaintiffs are required to exhaust federal administrative remedies. As Professor Davis queried, "Why are not the reasons for requiring exhaustion of state remedies stronger than the reasons for requiring exhaustion of federal remedies, on account of all the reasons behind the abstention doctrine?" K. Davis, Administrative Law § 20.01 at 646 (Supp.1970). In terms of comity, why should not state defendants have at least the same rights as federal defendants in suits against them for alleged governmental wrongs?
 
 IV. The Decision
 
 71
 Considering the policy factors which so heavily favor the imposition of an exhaustion requirement, we are compelled to conclude that adequate and appropriate state administrative remedies must be exhausted before a section 1983 action is permitted to proceed in federal court, absent any of the traditional exceptions to the general exhaustion rule. In so holding, we make it clear that we deal only with the question of what must be done procedurally before a section 1983 action is prosecuted in federal court. This decision in no way limits the range of substantive rights for which section 1983 provides a remedy.
 
 
 72
 In determining whether the administrative remedies available to a particular plaintiff are adequate and appropriate, the courts should look to the large body of law applying the exhaustion requirement in non-section 1983 contexts. In view of the importance of the rights protected by section 1983, however, certain minimum conditions must be met before resort to state administrative remedies can be made a prerequisite to proceeding under section 1983. First, an orderly system of review or appeal must be provided by statute or written agency rule. Second, the agency must be able to grant relief more or less commensurate with the claim. Third, relief must be available within a reasonable period of time. Fourth, the procedures must be fair, and not unduly burdensome, and must not be used to harass or otherwise discourage those with legitimate claims. Fifth, interim relief must be available, in appropriate cases, to prevent irreparable injury and to preserve the litigant's rights under section 1983 until the administrative process has been concluded.
 
 
 73
 Where these minimum standards are met, the court will need to further consider the particular administrative scheme, the nature of the interest the plaintiff seeks to protect, the values served by the exhaustion doctrine, and the proper balance of these interests in this type of case. See McKart v. United States, 395 U.S. at 193, 89 S.Ct. at 1662.
 
 
 74
 Contrary to the suggestion that the adoption of an exhaustion of administrative remedies requirement will somehow "turn back the clock" on civil rights law, we think that a carefully devised, well-monitored exhaustion requirement might well advance the cause of potential civil rights litigants. The resulting development of speedy and effective state administrative procedures for the vindication of 1983 transgressions could make available less expensive, less time consuming, more accessible, easily understandable procedures. For all litigants alike, but most particularly for those potential litigants who are neither so poor that they lose nothing by protracted federal court litigation nor so rich they can afford the risk of loss without financial worry, carefully constructed procedures within their own state and especially within their own agency should be a step forward, not backward. To suggest that administrative procedures are not up to the task of dispute resolution in 1983 controversies is to ignore a century of development in this widely accepted field of jurisprudence. To confuse substance with procedure is to obfuscate the purpose of the rule here adopted.
 
 V. The Present Case
 
 75
 In the complaint in this case, plaintiff alleged employment discrimination against her because she was white and a female. The complaint did not mention any effort to obtain relief through administrative procedures. The Board of Regents filed a short motion for dismissal "because the plaintiff has failed to exhaust her administrative remedies." In a supporting memorandum, the Board's attorney asserted that the rules of the university prohibit race and sex discrimination in its employment practices and that certain administrative procedures were available for anyone who has been aggrieved in equal employment opportunity. The memorandum said:
 
 
 76
 As a Career Service employee, Ms. Patsy has access to several administrative grievance procedures in the State University System. The administrative rules of the Department of Administration Career Service System, Division of Personnel provide that each Career Service employee or applicant shall be assured of an equal opportunity in all agency employment practices without regard to that person's "race, color, sex, religion, creed, national origin, political opinions or affiliations, or age" except as provided by law. Fla.Admin.Code, Chapter 22A-15.02(1). These rules also provide for a comprehensive complaint, review and appeal procedure for any career service employee or applicant who feels he or she has been aggrieved with respect to equal employment opportunity. Id., Chapter 22A-15.05. The Department of Administration also requires each agency to establish written procedures for handling grievances of Career Service employees. Id., Chapter 22A-10.04. As a result of this requirement, the administrative rules of the Department of Education, Florida International University provide a comprehensive method of handling the grievances of its Career Service employees. Id., Chapter 6C8-4.05. Under these rules, Ms. Patsy could have initiated an adequate and readily available grievance procedure after the denial of any of her applications. Id., Chapter 6C8-4.05(2)(a).
 
 
 77
 The memorandum further stated that the Board of Regents "has the power to remedy any practices which violate the University System's commitment to nondiscrimination and equal employment opportunity."In a responsive memorandum, the plaintiff simply argued that exhaustion of state administrative procedures is not required in section 1983 causes of action. The district court, apparently without hearing and without examining the adequacy of the administrative remedies available to plaintiff or any exceptions to the exhaustion rule, dismissed the complaint.
 
 
 78
 The district court correctly rejected the wooden application of the no-exhaustion requirement in section 1983 cases asserted by plaintiff. The record reflects, however, that it would have been impossible for that court to tell whether state administrative remedies were adequate in the context of the rights asserted by plaintiff, or whether she had in fact bypassed adequate remedies.
 
 
 79
 We therefore remand the case to the district court with directions to permit plaintiff to amend her complaint and then to apply the principles set forth in this opinion in determining whether plaintiff should be required to exhaust state administrative remedies before bringing this action. If the district court finds there are appropriate administrative remedies that plaintiff should exhaust, it may dismiss her complaint without prejudice. If the court finds on examination an exception to the requirement of exhaustion, then the case can proceed accordingly.
 
 
 80
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 81
 ALVIN B. RUBIN, Circuit Judge, with whom VANCE, FRANK M. JOHNSON, Jr., HATCHETT and SAM D. JOHNSON, Circuit Judges, join, dissenting:
 
 
 82
 The majority opinion is both a scholarly and pragmatic exposition of the reasons why Section 1983 claimants should in some cases be required to resort to administrative remedies before entering federal court. The evident fault lies not in its logic but in its eventual, albeit respectful, disregard for the numerous instances in which the Supreme Court has stated, "apparently quite categorically, that exhaustion is not required in Section 1983 cases,"[1] p. 906, and in its reliance on inferences drawn from Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).[2] My brethren find emanations from these cases that lead them to believe a Supreme Court majority is willing to adopt a rule of administrative exhaustion, but in neither case did the Court abandon the doctrine it had so often previously iterated.
 
 
 83
 In its effort to escape the import of what the highest court has done, the majority opinion suggests that the Supreme Court spoke only in dicta in every instance where the rule has been stated. Statements of the rule may indeed generally have been dicta. See, e. g., Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).
 
 
 84
 In Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam), however, the Supreme Court did not discuss the adequacy of state remedies when it held that exhaustion of state administrative remedies was not required. The majority describes the statement in Wilwording as dictum because "the lower court had suggested that plaintiffs should be required to exhaust certain state judicial remedies." (P. 907. Emphasis in original.) However, the Court of Appeals decision, Wilwording v. Swenson, 439 F.2d 1331 (8th Cir. 1971), states, "The state administrative procedure act is available as are suits for damages...." and required the plaintiffs to exhaust "available state procedures before requesting equitable relief in the federal courts." In reversing this decision, the Supreme Court began with the observation that the Court of Appeals had required the plaintiffs to invoke possible alternatives including "perhaps other relief under the State Administrative Procedure Act." Wilwording, 404 U.S. at 250, 92 S.Ct. at 249. The per curiam succinctly observes: "The remedy provided by (the Civil Rights Act) 'is supplementary' to the state remedy and the latter need not be first sought and refused before the federal one is invoked," and cites three of its prior decisions.
 
 
 85
 In stating consistently that exhaustion is not required, the Supreme Court must have been aware of the factors considered in the majority opinion and previously relied upon by the Second Circuit, speaking through Judge Friendly, in Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1969). It must have been aware, too, that there are good reasons beyond mere precedent not to require exhaustion of state remedies. These include the desirability of giving to civil rights plaintiffs, many of whom are indigent, the swiftest and least costly form of relief. See Comment, Exhaustion of State Administrative Remedies Under the Civil Rights Act, 8 Ind.L.Rev. 565 (1975); Comment, Exhaustion of State Remedies Under the Civil Rights Act, 68 Col.L.Rev. 1201 (1968).
 
 
 86
 The Supreme Court was also aware that the statute later codified as section 1983 was enacted by Congress in the belief that the states, or at least some of them, would not provide remedies for constitutional deprivations inflicted upon their citizens. In Mitchum v. Foster, 407 U.S. 225, 240-41, 92 S.Ct. 2151, 2161, 32 L.Ed.2d 705 (1972), the Court quoted these statements from the debate over that statute:
 
 
 87
 (R)ecords of the (state) tribunals are searched in vain for evidence of effective redress (of federally secured rights).
 
 
 88
 The Federal Government cannot serve a writ of mandamus upon State Executives or upon State courts to compel them to protect the rights, privileges and immunities of citizens.
 
 
 89
 All the apparatus and machinery of civil government, all the processes of justice, skulk away as if government and justice were crimes and feared detection. Among the most dangerous things an injured party can do is to appeal to justice.
 
 
 90
 See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).
 
 
 91
 The Congress that enacted Section 1983 had cause to doubt the willingness of state authorities to redress violations of federal constitutional rights, and to be especially troubled by the attitude of state officials in those states where such violations were so grievous as to generate the urgent need for federal legislation. Congress, therefore, did not require exhaustion of state judicial or administrative remedies and the Supreme Court itself has never done so despite the Court's invocation in other situations of federalism as a basis for adopting abstention and other doctrinal reasons to withhold federal judicial action until state relief has been unsuccessfully sought.
 
 
 92
 When the court that is constitutionally designated as Supreme has spoken so often, so categorically and so recently, it is not meet for us, as an inferior court, to avoid the patent import of those judicial statements. Justification for our departure cannot be found in the requirement that claimants asserting violations of their rights by federal officials are required to exhaust their federal remedies. Those claims are founded on other statutes or on implied remedies. The Congress that enacted Section 1983 did not have the faith in state administrative remedies that later Congresses undoubtedly had in the federal administrative remedies of their own creation. Indeed, Congress so doubted the dedication of the members of state executive branches that it enacted the very statute we now interpret. See Mitchum v. Foster, supra. Since 1871, Congress has not expressed a contrary legislative intent in the area of civil rights violations by state officials. Moreover, requiring resort to a nationally uniform federal administrative procedure is not the same as requiring pretesting of fifty diverse mechanisms whose personnel and procedures vary tremendously.
 
 
 93
 The majority may sense that, to some degree, Georgia Patsy's claim is not ripe for adjudication. We have insufficient information on appeal to determine whether the defendant is truly "committed to conduct that would raise the proffered issues for decision." 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Civil § 3532, at 247. The university's failure to act on Ms. Patsy's application may or may not have been sufficient to commit it to the role of adversary for purposes of this litigation. See Stevenson v. Board of Education, 426 F.2d 1154 (5th Cir. 1970), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970). Ripeness, however, is an entirely separate doctrine from exhaustion of administrative remedies. United States ex rel. Ricketts v. Lightcap, supra; Stevenson v. Board of Education, supra. Ripeness is satisfied at the first moment when the controversy becomes justiciable; this moment may occur long before administrative remedies have been exhausted if the parties are sufficiently adverse and the facts have been adequately developed, whether or not alternative forums are available. Questions about ripeness might warrant a remand to the district court, but such questions do not justify the adoption of the panoply of exhaustion rules.
 
 
 94
 No less than the majority, I welcome the increasing willingness of state administrators and judges to vindicate federal rights. Only Congress, however, may substitute a policy of congressional deference to state remedial devices whose adequacy the majority opinion must announce a rule regalia to define. I am troubled that, despite this attempt to fashion protection for the civil rights litigant, remedy-exhaustion may prove to be litigant exhaustion. Congress may still believe that, in spite of the policy factors adduced by the majority, the federal courts are likely to provide a civil rights plaintiff with the swiftest, least costly and most reliable remedy, and that the litigant should have access to these portals without first passing through state administrative antechambers. In any event, it is not for this court to make such policy judgments in the face of consistent Supreme Court teaching to the contrary and subsequent apparent congressional concurrence in that doctrine for decades.
 
 KRAVITCH, Circuit Judge, dissenting:
 
 95
 The majority, in a comprehensive opinion, advances compelling arguments for requiring exhaustion of state administrative remedies, where adequate, as a prerequisite to a § 1983 action. I do not agree, however, that the language in any Supreme Court opinion cited authorizes a lower court to adopt this change. In my judgment, we are bound by the present rule of non-exhaustion until Congress amends the statute or the Supreme Court alters its interpretation.
 
 
 96
 I therefore dissent.
 
 
 97
 HATCHETT, Circuit Judge, with whom ALVIN B. RUBIN, VANCE, FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges, join, dissenting:
 
 
 98
 I respectfully dissent.
 
 
 99
 The majority holds that "adequate and appropriate state administrative remedies must be exhausted before a section 1983 action is permitted to proceed in federal court absent any of the traditional exceptions to the general exhaustion rule." I dissent because this holding contravenes numerous decisions of the nation's highest Court; presumes a congressional intent never articulated by Congress; usurps authority delegated to Congress; and turns the clock back to the 1950's by creating a procedural nightmare that can only have a "chilling effect" on civil rights litigation. In short, I dissent because I believe the majority opinion is both legally unsound and judicially inappropriate.
 
 
 100
 The majority makes much of the observation that administrative remedies were inadequate in each of the cases in which the Supreme Court has stated that a section 1983 plaintiff need not exhaust state administrative remedies. In my opinion, this observation neither requires nor permits a lower court to institute an exhaustion rule for 1983 plaintiffs. As a tribunal bound by law and oath to follow the declarations of our highest Court, we must assume that the Supreme Court means what it says when reiterating, "apparently quite categorically, that exhaustion is not required in Section 1983 cases." Majority opinion, at 906. Why would the Supreme Court articulate an absolute no-exhaustion rule in cases in which it was admittedly unnecessary unless the Court intended the lower courts to adhere to that rule in all 1983 cases? We must not presume that the Supreme Court makes meaningless, gratuitous statements. Instead, we must give deference and substance to its repeated, unequivocal declaration that exhaustion is not required in section 1983 cases.[1]
 
 
 101
 Numerous cases have presented the Court with an opportunity to recant its no-exhaustion declaration. Eminent critics have urged the Court at least to restrict the scope of the rule to cases falling within the established exceptions to the exhaustion requirement.[2] Never has the Court retreated from its original pronouncement that exhaustion of state remedies is simply unnecessary to the institution of a section 1983 action. The significance of the Court's steadfast refusal in case after case to discard or diminish its no-exhaustion rule cannot be overestimated.
 
 
 102
 The Supreme Court did not announce its no-exhaustion rule in a vacuum. Prior to its decision in McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), a frequent impediment to the prosecution of suits under section 1983 had been the requirement that a plaintiff exhaust adequate state administrative remedies before proceeding in federal court.[3] Commentators noted that prior to McNeese the "requirement that a plaintiff exhaust state administrative remedies before he may maintain a suit in equity under section 1983 was black letter law." Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L.Rev. 1486, 1500 (1969). The Court's no-exhaustion rule regarding state judicial remedies, exemplified by Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and the Court's no-exhaustion rule regarding state administrative remedies, announced in McNeese, together with their progeny represent a natural judicial effort to permit the full implementation of the Civil Rights Act of 1871.
 
 
 103
 Any "confusion surrounding these cases derives partly from the factual contexts of the cases (most fall within traditional 'inadequate' or 'futile' exceptions) and partly from the puzzling brevity of the courts' explanations for such a no-exhaustion rule." Comment, Exhaustion of State Administrative Remedies Under the Civil Rights Act, 8 Ind.L.Rev. 565, 570 (1975). Yet careful examination of the concerns of Congress and the decisions of the Supreme Court should remove any confusion and solve any puzzle surrounding the Court's declaration of a no-exhaustion rule in all 1983 actions.
 
 I. SECTION 1983 AND THE COURT
 
 104
 A. The Early History of Restrictive Judicial Interpretation
 
 
 105
 Section 1983 was enacted as part of the Civil Rights Act of 1871 (the "Ku Klux Klan Act"). The section provides a private, federal remedy for persons deprived of federal rights under color of state law:
 
 
 106
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (42 U.S.C. § 1983.)
 
 
 107
 Though this language is broad and inclusive, section 1983 initially proved ineffective as a shield against state violation of federal rights. Restrictive judicial interpretation permitted a section 1983 action only to vindicate section 1983 offenses actually committed by the states. Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883); United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588 (1875).
 
 
 108
 In the 1940's, the Supreme Court began to allow full implementation of the Civil Rights Act by recognizing the broad reach of the words "under color of state law." 42 U.S.C. § 1983. See Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). This new recognition of the substantive scope of section 1983, however, failed to remove the major procedural impediment to its full effectiveness: the judicially-created requirement of exhaustion of state judicial and administrative remedies. As late as 1960, less than 300 federal suits were brought under all of the civil rights acts. Administrative Office of the United States Courts, 1960 Annual Report of the Director 232, table C 2. "Section 1983, enacted as part of the Civil Rights Act of 1871 to enforce the guarantees of the fourteenth amendment by providing a cause of action in federal court, lay dormant as a result of restrictive judicial construction until the Supreme Court's 1961 decision in Monroe v. Pape." Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1135-36 (1977).
 
 B. The Seminal Decision of Monroe v. Pape
 
 109
 In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), an Illinois resident sought damages under section 1983 from the City of Chicago and individual policemen for allegedly conducting an unconstitutional search of his home under color of state law. Since the alleged conduct of the policemen also violated Illinois law, the action could have been brought under state law in state court. Although the Supreme Court concluded that the City of Chicago could not be sued as a "person" under section 1983, it held that the alleged conduct of the policemen which violated state law constituted "action under color of state law" and supported a section 1983 action in federal court without the necessity of exhausting state judicial remedies.
 
 
 110
 In concluding that exhaustion was unnecessary, the Monroe Court examined the history and purposes of section 1983. The Court identified these purposes as: (1) the overriding of particular state laws; (2) the provision of a remedy when state law was inadequate; and, (3) the creation of a federal remedy when the state remedy, though adequate in theory, was not available in practice. Monroe, at 173-74, 81 S.Ct. at 476-77. These first three purposes could have been served by requiring a section 1983 plaintiff to exhaust his state judicial remedies whenever they are truly adequate. Since there had been no showing in Monroe that the state laws and procedures were in any way deficient, the Court's decision to permit federal suit without such exhaustion necessarily rested upon a critical fourth purpose underlying section 1983: the "federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Monroe, at 183, 81 S.Ct. at 481; see, e. g., Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1170 (1977).
 
 
 111
 The majority opinion virtually ignores this clearly-stated and critically-important fourth purpose of providing a federal remedy through 1983 that is fully independent and supplementary. The majority merely argues that "(f)ar from thwarting congressional intent, a requirement of exhaustion of adequate state remedies is wholly consistent with the second and third congressional purposes identified in Monroe v. Pape, that is, the provision of a federal remedy where the state remedy is inadequate on its face or in practice." (Emphasis added.) Yet the decision today to institute traditional exhaustion requirements in 1983 cases clearly thwarts Monroe's fourth purpose of providing an independent, supplemental federal remedy.
 
 
 112
 The majority opinion does obliquely acknowledge this fourth supplementary purpose of section 1983 through extensive quotation of Justice Rehnquist's dissent from the denial of certiorari in City of Columbus v. Leonard, 443 U.S. 905, 99 S.Ct. 3097, 61 L.Ed.2d 872 (1979). Joined by two other members of the Court, Justice Rehnquist concluded in this dissent that "the time may now be ripe for a reconsideration of the Court's conclusion in Monroe that the 'federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.' " Leonard, at 911, 99 S.Ct. at 3101. Apparently a super-majority of the Supreme Court disagreed; Justice Rehnquist could only dissent. His invitation to reconsider the supplementary nature of section 1983 thus represents nothing more than an invitation declined. At least Justice Rehnquist admits what this court would deny: the independence of 1983 from state remedies constitutes the established law of our highest Court, law which that Court refused to reconsider as recently as 1979.[4]
 
 
 113
 C. Extension of Monroe to Administrative Remedies
 
 
 114
 Monroe referred only to the exhaustion of state judicial remedies. Yet the Monroe Court's recognition that Congress intended section 1983 to provide an independent and supplementary federal remedy laid the foundation for extension of the exhaustion principle to administrative procedures.
 
 
 115
 This extension occurred in the 1963 decision of McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). In McNeese, black students alleged racial discrimination in an Illinois public school system and brought suit under section 1983 for equitable relief. The administrative remedy available to the plaintiffs provided that residents could file a complaint with the Superintendent of Public Instruction, who would then hold a hearing. If the Superintendent decided that the allegations were correct, he would request the attorney general to bring suit in the state courts. The district and appellate courts dismissed the suit for failure to exhaust available administrative remedies.
 
 
 116
 Relying upon the fourth congressional purpose identified in Monroe, the Court in McNeese held that plaintiffs bringing suit under section 1983 were not subject to any exhaustion requirement: "relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy." McNeese, at 671, 83 S.Ct. 1435.
 
 
 117
 Admittedly, the McNeese Court also based its decision upon the finding that the state administrative remedy was inadequate, since it offered only "tenuous protection" to the plaintiffs' federal rights. McNeese, at 676, 83 S.Ct. at 1438. The mere fact that the Court refused to base McNeese solely upon this inadequacy of the state remedy suggests that it intended to announce a no-exhaustion rule for all section 1983 cases. Moreover, subsequent Supreme Court interpretations of McNeese show that the Court views McNeese as establishing that state administrative procedures need not be exhausted even when they are adequate.
 
 D. The Post-McNeese Decisions
 
 118
 Four years after McNeese, the Court decided Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). In Damico the Court quoted McNeese for the proposition that "relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided (an administrative) remedy." Damico, at 417, 88 S.Ct. at 526 (quoting from McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963) (bracketed material added by the Damico Court). The Damico Court's insertion of the words "an administrative" indicates its desire to confirm that McNeese had completely abolished the administrative exhaustion requirement. To comprehend the full import of the insertion "an administrative," Justice Harlan's lone dissent in Damico must be considered. Significantly, Justice Harlan argued that McNeese did not govern in Damico because of the finding in McNeese that the state administrative remedy was inadequate. The majority of the Damico Court rejected Justice Harlan's restrictive view of McNeese ; no Justice joined Justice Harlan's dissent.
 
 
 119
 The import of Damico and its lone dissent was apparent to commentators. As one thoughtful article stated:
 
 
 120
 Prior to the 1967 term, the Supreme Court's treatment of the exhaustion requirement had been inconclusive. Last year, however, when the need for exhaustion was again urged upon the Court in Damico v. California, it was rejected summarily. Surprisingly, the question was treated as one governed by settled law.
 
 
 121
 The Supreme Court in Damico appears to have eliminated the exhaustion requirement in suits under the Civil Rights Act. The result is not surprising; recent pronouncements by the Court had perhaps foreshadowed this development. What is surprising is the summary nature of the opinion, for neither of the two cases cited by the Court McNeese and Monroe mandated the result reached.
 
 
 122
 Comment, Exhaustion of State Remedies Under the Civil Rights Act, 68 Col.L.Rev. 1201, 1201-1202 (1968) (footnotes omitted). That the Court chose to treat the exhaustion question presented in Damico as one of "settled law" is of crucial significance. In short, Damico erased any doubt about exhaustion in 1983 cases by confirming that McNeese stands for the proposition that "relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided (an administrative) remedy." Damico, 389 U.S. at 417, 88 S.Ct. at 526.
 
 
 123
 It therefore matters little that in Damico "it was beyond the authority of the administrative agency to declare a state statute or regulation unconstitutional and thus the administrative remedies were clearly inadequate." Majority opinion, at ----; accord, Secret v. Brierton, 584 F.2d 823 (7th Cir. 1979); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). While administrative remedies may have been inadequate, the Damico Court refused to rest its decision on this ground, and indeed, did not even mention it. Even more important than the Court's lack of interest in the adequacy of remedies in Damico itself was the Court's interpretation of McNeese as rendering any inquiry into state administrative remedies simply irrelevant in 1983 actions.
 
 
 124
 In the next Supreme Court case treating administrative exhaustion, King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the Court again rejected the argument that exhaustion applies to section 1983 cases:
 
 
 125
 We reject appellants' argument that appellees were required to exhaust their administrative remedies prior to bringing this action.... Decisions of this Court ... establish that a plaintiff in an action brought under the Civil Rights Act, 42 USC § 1983, 28 USC § 1343 is not required to exhaust administrative remedies where the constitutional challenge is sufficiently substantial, as here, to require the convening of a three-judge court.
 
 
 126
 King v. Smith, at 312 n. 4, 88 S.Ct. at 2130 n. 4.
 
 
 127
 King was followed in the same term by Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). On the facts of that case, exhaustion would have been futile and, therefore, not required. The Supreme Court noted the probable futility of the available administrative process, but confirmed that "(i)n any event, resort to these remedies is unnecessary in light of our decisions in Monroe, McNeese, and Damico." Shafer, at 640, 88 S.Ct. at 2120. Can there be any doubt after reading the quoted Shafer language that the highest Court believes that a no-exhaustion rule had been established by the three prior cases?
 
 
 128
 In a subsequent habeas corpus case, Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), the Court repeated the "(i)n any event" language of Shafer. In Wilwording, the Court stated that it had already established that a section 1983 plaintiff need not invoke state remedies before seeking a federal forum. Wilwording thus undermined the argument originally formulated by Judge Friendly in Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), and reiterated by today's majority that the Supreme Court has never held unambiguously that exhaustion is necessary when state remedies are adequate. As expressed by one commentator:
 
 
 129
 The Supreme Court undermined Judge Friendly's argument in Wilwording v. Swenson, a habeas corpus case challenging state prison conditions. The Court rejected the suggestion that its holding in Shafer was based on the futility of the appeal: "Although the probable futility of such administrative appeals was noted, we held that 'in any event, resort to these remedies is unnecessary.' " The Court's willingness to extend its liberalized exhaustion principle seemed unambiguous when it held in Wilwording that, for exhaustion purposes, the plaintiffs were entitled to have their habeas corpus claim treated as if it had been brought under section 1983.
 
 
 130
 Comment, Exhaustion of State Administrative Remedies Section 1983 Cases, 41 U.Chi.L.Rev. 537, 546 (1974) (footnotes omitted).
 
 
 131
 In a later section 1983 case, Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972), the Supreme Court vacated a lower court dismissal for failure to exhaust administrative remedies on the ground that Damico, "an indistinguishable case(,) ... establishes that exhaustion is not required in circumstances such as those presented here." Carter, at 671, 92 S.Ct. at 1234. As in Damico, the constitutionality of the statute was in issue and the adequacy of the administrative remedy was questionable. Once again the Supreme Court refused to rest its decision on the fact that the available administrative remedy was inadequate.
 
 
 132
 The majority opinion discusses and relies upon the subsequent decision of Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). This reliance on Gibson is misplaced, as noted by one law professor:
 
 
 133
 (T)he (Gibson) Court intimated that perhaps exhaustion of state administrative remedies would be required in some 1983 cases as where, for example, "a license revocation proceeding has been brought by the state and is pending before one of its own agencies and where the individual charge is to be deprived of nothing until the completion of that proceeding ...." (T)he following year the Court reiterated, without qualification, its long standing no-exhaustion rule for state administrative remedies. In this connection it is significant that the Court has never in fact required exhaustion of state administrative remedies in a 1983 case.
 
 
 134
 S. Nahmod, Civil Rights and Civil Liberties Litigation, 145 (1979) (footnotes omitted). In addition to being repudiated by later cases, the language from Gibson quoted by Professor Nahmod and the majority constitutes no more than dictum.[5]
 
 
 135
 Promptly after Gibson, the Court restated, without qualification, the established no-exhaustion rule in Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). "When federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3)-as they are here-we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." Steffel, at 472-73, 94 S.Ct. at 1222. (Emphasis added.) The Court again stated the no-exhaustion rule in the subsequent case of Ellis v. Dyson, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975): "exhaustion of state judicial or administrative remedies in Steffel was ruled not to be necessary, for we have long held that an action under section 1983 is free of that requirement." Ellis, at 432-33, 95 S.Ct. at 1694-95.
 
 
 136
 The Court rendered Steffel and Ellis subsequent to Gibson. Both Steffel and Ellis contain clear pronouncements of the no-exhaustion rule. The majority opinion dismisses the statements as dicta. While the pronouncements may be dicta, they are relevant and revealing as Supreme Court interpretations of earlier Court precedent and should guide a lower court in understanding and following Supreme Court decisions. The unequivocal no-exhaustion statements in Steffel and Ellis thus refute the argument advanced by Judge Friendly in Eisen and restated by today's majority. As appreciated by Judge Hunter of the Third Circuit:
 
 
 137
 After its decision in Gibson, the Court again reaffirmed its adherence to the rule that exhaustion is not required, without mentioning the adequacy of available remedies. Ellis v. Dyson, 421 U.S. 426, 432-33, 95 S.Ct. 1691 (at 1694-95), 44 L.Ed.2d 274 (1975); Wolff v. McDonald, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). These cases indicate that possible sentiments in Gibson have not come to fruition.
 
 
 138
 United States ex rel. Ricketts v. Lightcap, 567 F.2d 1226, 1230-31 (3d Cir. 1977).
 
 
 139
 As recently as 1979, the Court had an excellent opportunity in Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), to overrule its no-exhaustion rule if such was the Court's desire. The real significance of Barry, cited by the majority, is that the Court refused to retreat from the no-exhaustion rule prefigured by Monroe (1960), announced by McNeese (1963), confirmed by Damico (1967), relied upon by King (1968), Shafer (1968), Wilwording (1971) and Carter (1972), reiterated after Gibson (1973) by Steffel (1974) and Ellis (1975), and reconfirmed by the rejection of Justice Rehnquist's dissent in Leonard (1979). Clearly the Court adheres to the no-exhaustion rule.
 
 II. SECTION 1983 AND FEDERALISM
 
 140
 The majority opinion implies that in by-passing state administrative remedies the current no-exhaustion rule creates needless federal-state friction and thereby constitutes poor federalism. Good federalism, however, does not demand unreasoned acquiescence to state interests. Indeed, "Our Federalism," as described by Justice Black in Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 660 (1971), requires a balancing of competing federal and state interests.
 
 
 141
 Admittedly, "(i)t is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." New State Ice Co. v. Liebmann, 285 U.S. 262, 311, 52 S.Ct. 371, 386, 76 L.Ed. 747 (1932). (Brandeis, J., dissenting.) Yet it is equally true that "one of the strengths of our federal system is that it provides a double source of protection for the rights of our citizens. Federalism is not served when the federal half of that protection is crippled." Justice Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489, 503 (1977). The need for independent federal supplementation of state innovations is keenly apparent in the context of civil rights and section 1983.
 
 
 142
 The history of section 1983 shows that states should be free to devise improved mechanisms for protecting civil rights; litigants should be free to choose state-created remedies; but, the federal remedy should always be available independently. The predecessor of section 1983,
 
 
 143
 (w)as enacted for the express purpose of "enforce(ing) the Provisions of the Fourteenth Amendment." 17 Stat. 13. The predecessor of § 1983 was thus an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and the constitutional amendment. As a result of the new structure of law that emerged in the post-Civil War era-and especially of the Fourteenth Amendment, which was its centerpiece, the role of the Federal Government as a guarantor of basic federal rights against state power was clearly established.
 
 
 144
 Section 1983 was thus a product of a vast transformation from the concepts of federalism that had prevailed in the late 18th century. ... The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights-to protect the people from unconstitutional action under color of state law, "whether that action be executive, legislative or judicial." Ex parte Virginia, 100 U.S. at 346, 25 L.Ed. at 679.
 
 
 145
 Mitchum v. Foster, 407 U.S. 225, 238-39, 242, 92 S.Ct. 2151, 2159-60, 2162, 32 L.Ed.2d 705 (1972).
 
 
 146
 This court has similarly explained the revolutionary nature of the Civil Rights Act and the remedy it created in the section now codified at 1983. In Moreno v. Henckel, 431 F.2d 1299, 1305 (5th Cir. 1970), we said:
 
 
 147
 The Act was not one artfully phrased so as not to disturb the relationship between the States and the Nation. If there is one thing certain about the legislative history of the Act, it is that Congress, open-eyed, deliberately set out to alter the so-called "delicate balance" between the state and the federal government so that federal courts could effectively protect federal rights.
 
 
 148
 In deciding cases brought under section 1983, we must never forget that Congress intended to fundamentally change the relationship between the states and the nation with the Civil Rights Act. We must remember that Congress intended the federal courts, endowed with the protections afforded by life-tenure, to serve as a barrier between the states and aggrieved individuals in the protection of civil rights.[6]
 
 
 149
 The alteration of our federal structure by act and amendment in the wake of the Civil War, and the resulting reliance upon the federal courts as primary protectors of civil rights, strongly argues against institution today of exhaustion requirements in section 1983 cases.
 
 
 150
 (T)he absence of an exhaustion requirement in § 1983 is not an accident of history or the result of careless oversight by Congress or this Court. On the contrary, the no-exhaustion rule is an integral feature of the statutory scheme. Exhaustion of state remedies is not required precisely because such a requirement would jeopardize the purposes of the Act.
 
 
 151
 Preiser v. Rodriguez, 411 U.S. 475, 518, 93 S.Ct. 1827, 1850, 36 L.Ed.2d 439 (1973) (Brennan, J., dissenting as to other matters). The difference noted by the majority between the requirement of exhaustion of federal administrative remedies in section 1983 cases and the absence of any requirement of exhaustion of state administrative remedies merely demonstrates the critical difference between the federal and state roles in the realm of civil rights. Compare McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (articulating the reasons for requiring exhaustion of federal administrative remedies) with the line of section 1983 cases refusing to require exhaustion of state administrative remedies. The paramount role of the federal government in the realm of civil rights, as envisioned by the Congress and the Constitution, is wholly inconsistent with today's dilution of the federal section 1983 remedy through imposition of state exhaustion requirements.
 
 
 152
 The development of the exhaustion doctrine represented, at least in part, an attempt to minimize intergovernmental friction by deferring to the maximum extent possible to the interest of the states in ordering and regulating their own affairs.
 
 
 153
 However, ritual genuflection in the direction of federalism should be avoided. The states are not the only legitimately interested parties. A reasoned evaluation of the exhaustion requirement cannot be made without considering other factors which may outweigh the interest of the states in orderly recourse to their procedures. One of these is delay. Even without conscious state efforts to frustrate the assertion of unpopular rights by requiring recourse to dilatory remedial procedures-and an exhaustion rule does open the door to such efforts-the inevitable consequence of insistence on exhaustion is substantial delay in vindication of the constitutional rights of many complainants.
 
 
 154
 Comment, Exhaustion of State Remedies, 68 Col.L.Rev. 1201, 1206-7 (1968) (footnotes omitted).
 
 III. SECTION 1983 AND THE NO-EXHAUSTION RULE
 
 155
 There are many reasons why this court should not abolish the no-exhaustion rule. First, and fundamentally, the Supreme Court has enunciated and continually followed the no-exhaustion rule. As explained in Section I of this dissent, until such time as the highest Court rejects the rule, this court should steadfastly follow it.
 
 
 156
 Second, as explained in Section II, Congress did not intend to require exhaustion of state administrative remedies. If Congress intended at any time to require exhaustion of judicial remedies in section 1983 cases, it could have easily expressed its disagreement with the Court's no-exhaustion rule by adopting the explicit statutory language often used in other areas. See, e. g., 28 U.S.C. § 2254(b) (habeas corpus for state prisoners); 28 U.S.C. § 1342 (state rate orders); 28 U.S.C. § 1341 (state taxes). Further, Congress created the special remedy that is section 1983 after survey, public debate, and findings. Rather than abrogating the no-exhaustion rule by judicial fiat, this court should permit Congress to make any such alteration through the full and open legislative process.
 
 
 157
 Third, although it is often argued that administrative remedies should be exhausted because of the "expertise" of an administrative body, where federal issues are involved, no such "expertise" resides in state administrative agencies.
 
 
 158
 A suit under the Civil Rights Act will often turn upon isolable issues of federal law, and involve federal (constitutional) rights of a particularly sacrosanct character. Insofar as the question is one of federal law, the federal court is the "expert" body. There is a strong federal interest in adjudicating these cases immediately, without any exhaustion of state procedures.
 
 
 159
 Comment, Exhaustion of State Remedies Under the Civil Rights Act, 68 Col.L.Rev. 1201, 1207-8 (1968). (Emphasis added.)
 
 
 160
 Fourth, there is a very real danger that the delay inherent in requiring use of state administrative processes may discourage aggrieved individuals from seeking vindication of their rights.[7] I agree with Judge Rubin that "the federal courts are likely to provide a civil rights plaintiff with the swiftest, least costly, and most reliable remedy." Dissent of J. Rubin, at 916.
 
 
 161
 Fifth, the majority opinion may create a time-consuming procedural nightmare, the curse of both litigants and federal trial judges.[8] After the filing of a section 1983 complaint, the defendant will likely move to dismiss on the ground that the state administrative remedies are adequate. To rule on this motion, the district court will not only have to examine state remedies, but also take testimony from knowledgeable persons as to how the administrative process really works. If the state administrative remedy is found adequate, the court will have to decide whether to dismiss the suit or retain jurisdiction. Presumably, the state's statute of limitations will be tolled during the ensuing period of exhaustion since the majority makes pursuit of state administrative remedies a prerequisite to federal suit. See, e. g., Bryant v. Potts, 528 F.2d 621 (5th Cir. 1976). If the plaintiff loses on every point of the state administrative claim, since neither res judicata nor collateral estoppel apply, the plaintiff may then, having exhausted administrative remedies, return to the federal court to continue the suit.
 
 
 162
 Sixth, the typical state administrative process is not constituted to provide adequately for the award of costs and attorney's fees.[9] Thus, even when a litigant prevails in the state administrative process, he will still need to return to federal court for an award of costs and attorney's fees. By the time the prevailing plaintiff completes the procedural nightmare dictated by the majority opinion, costs and attorney's fees will be staggering.
 
 
 163
 Seventh, most administrative processes cannot adequately entertain class action claims. In the typical administrative setting, when an individual plaintiff is a member of a class and is suing to protect the rights of the class, an individual settlement may be satisfactory. Although satisfactory to the individual plaintiff, it may not protect other class members from like deprivations.
 
 
 164
 Eighth, assuming that considerations of federal-state friction avoidance are relevant, friction between the states and the federal judiciary can only increase under a system that requires federal courts to judge the adequacy of state administrative remedies.[10] Moreover, the majority opinion will in fact interfere with orderly state procedures. What will be the effect of a federal court ruling that a particular state administrative scheme is not adequate for the protection of litigants' constitutional rights? Will the state be under any duty to amend its statutes and regulations for the next litigant? If a state disagrees with this finding, may it appeal? May the state participate in the hearing regarding the adequacy of state remedies?
 
 CONCLUSION
 
 165
 The majority opinion contravenes a Supreme Court rule consistently applied by the Court in section 1983 cases. The majority opinion assumes a congressional intent never articulated by Congress, and, in so doing, usurps the role assigned to Congress by the Constitution. Most unconscionably, however, the majority opinion will have a "chilling effect" on civil rights litigation after Congress and the Court have struggled mightily to afford civil rights litigants speedy, inexpensive, and reliable redress for constitutional deprivations.
 
 
 166
 Exhaustion of state administrative remedies simply has no place in the civil rights context. I agree with Judge Friendly's conclusion that "(i)t is hard to conceive a task more appropriate for federal courts than to protect civil rights guaranteed by the Constitution against invasion by the states." H. Friendly, Federal Jurisdiction: A General View 90 (1973). Today's institution of an exhaustion requirement can only interfere with our performance of that most appropriate task.APPENDIX
 
 
 167
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 *
 Judge Jerre S. Williams has become a member of the Court since this case was taken under submission. He elects not to participate in the decision
 
 
 [1]
 Among these cases are Ellis v. Dyson, 421 U.S. 426, 432-33, 95 S.Ct. 1691, 1694-95, 44 L.Ed.2d 274 (1975); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Allee v. Medrano, 416 U.S. 802, 814, 94 S.Ct. 2191, 2200, 40 L.Ed.2d 566, 580 (1974); Steffel v. Thompson, 415 U.S. 452, 472, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); Preiser v. Rodriguez, 411 U.S. 475, 492-93 n. 10, 93 S.Ct. 1827, 1837-38 n. 10, 36 L.Ed.2d 439 (1973); Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); Wilwording v. Swenson, 404 U.S. 249, 251-52, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971); Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319 (1968); King v. Smith, 392 U.S. 309, 312 n. 4, 88 S.Ct. 2128, 2131 n. 4, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 527, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963). See 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3573, at 497-98 (1975). As one commentator has noted, "it is significant that the Court has never in fact required exhaustion of state administrative remedies in a (s) 1983 case." S. Nahmod, Civil Rights & Civil Liberties Litigation 145 (1979)
 
 
 [2]
 Note that the no-exhaustion rule was categorically restated in Ellis v. Dyson, supra, decided in 1975, two years after the decision in Gibson v. Berryhill, which is relied upon by the majority. See Judge Hunter's thorough opinion in United States ex rel. Ricketts v. Lightcap, 567 F.2d 1226 (3d Cir. 1977)
 
 
 [1]
 As noted by Judge Rubin, the Supreme Court has made this unequivocal declaration in the following cases: Ellis v. Dyson, 421 U.S. 426, 432-33, 95 S.Ct. 1691, 1694-95, 44 L.Ed.2d 274 (1975); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Allee v. Medrano, 416 U.S. 802, 814, 94 S.Ct. 2191, 2200, 40 L.Ed.2d 566, 580 (1974); Steffel v. Thompson, 415 U.S. 452, 472, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); Preiser v. Rodriguez, 411 U.S. 475, 492-93 n. 10, 93 S.Ct. 1827, 1837-38 n. 10, 36 L.Ed.2d 439 (1973); Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); Wilwording v. Swenson, 404 U.S. 249, 251-52, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971); Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319 (1968); King v. Smith, 392 U.S. 309, 312 n. 4, 88 S.Ct. 2128, 2131 n. 4, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 527, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963)
 
 
 [2]
 See, e. g., Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970) (Friendly, J.); Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases, 41 U.Chi.L.Rev. 537 (1974)
 
 
 [3]
 Comment, Exhaustion of State Remedies Under the Civil Rights Act, 68 Col.L.Rev. 1201 (1968)
 
 
 [4]
 Aside from the fact that Justice Rehnquist expresses no more than a dissenting view, his reasoning in Leonard cannot withstand scrutiny. In a portion of the dissent deleted by the majority opinion, Justice Rehnquist reasons that because the Court has recently overturned that portion of Monroe which rendered local governments immune from suit under 1983, "the time may now be ripe" for reconsideration of the other Monroe holding that the federal remedy is fully supplementary. The problem with this reasoning is that the Court overruled a portion of Monroe not to diminish its impact, but to realize the full reach of 1983 by making subsidiary local governments liable on the same basis as a state government. See Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Developments after Monroe thus show an increase in the reach of section 1983, rather than foretelling its dilution through institution of an exhaustion requirement
 
 
 [5]
 See Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases, 41 U.Chi.L.Rev. 537 (1974)
 
 
 [6]
 See Developments in the Law-Section 1983 and Federalism, 90 Harv.L.Rev. 1133 (1977)
 
 
 [7]
 We need only consider Patsy's plight to appreciate the delay inherent in even a well-intentioned state administrative procedure. Upon a determination by the trial court that the administrative remedy is adequate, Patsy must utilize the Florida International University (FIU) career service employee (CSE) grievance procedure set forth in 6C8-4.05 of the Florida Administrative Code (see Appendix, Table I). If these procedures culminate in an unfavorable ruling, Patsy may then apply to the Florida Human Relations Commission (HRC) under procedures outlined in 9D-9 of the Florida Administrative Code (See Appendix, Table II)
 The CSE Procedure
 The CSE procedure requires that Patsy attempt to seek redress from her superior and others in the FIU chain of command. If FIU personnel fail to follow CSE procedures, Patsy may seek redress from the Florida Director of Personnel in the Department of Administration. The Director may request compliance from FIU personnel, but if this request is denied Patsy is left without a remedy since the Director lacks enforcement authority.
 Upon the issuance by FIU personnel of an unfavorable decision, Patsy may refile her grievance with the Director only if she alleges that the University failed to follow the Florida Administrative Code. The Director may then issue a final decision. Once again, though, the Director lacks authority to enforce his decision.
 The HRC Procedure
 If Patsy is dissatisfied with either the ruling of FIU personnel or the decision of the Director, she may file a complaint with the Human Relations Commission. The HRC procedure can be extremely time consuming. E. g., Hargis v. Leon County School Board, II Florida Administrative Law Reports 957-A (1980) (HRC decision issued more than a year and a half after the filing of complaint).
 Additionally, the Human Relations Commission lacks independent enforcement power. In order to enforce its decisions, the Commission must petition the appropriate Florida circuit court, and appeal an unfavorable ruling. See Fla.Stat.Ann. 120.69.
 
 
 [8]
 This procedural nightmare will only encourage the filing of frivolous constitutional challenges. Since it is beyond the scope of an administrative agency to declare a state statute or regulation unconstitutional, litigants will strive to assert constitutional deficiencies in all cases in order to enter the federal courts directly
 
 
 [9]
 In light of the usual absence of adequate provision for costs and attorney's fee, it is doubtful that state administrative procedures can ever be truly adequate
 
 
 [10]
 As explained above, I am of the opinion, shared by others, that it is "very doubtful that considerations of friction-avoidance have any place in civil rights litigation in light of the history and purposes of section 1983." Comment, Exhaustion of State Administrative Remedies Under the Civil Rights Act, 8 Ind.L.Rev. 565, 587 (1975); see also, Note, Section 1983: A Civil Remedy for the Protection of Federal Rights, 39 N.Y.U.L.Rev. 839 (1964)